ANDRÉS MARTÍNEZ CAMPOS y OTROS, demandantes y recurridos, *v.* BANCO DE PONCE, demandado y peticionario.

*Número:* CE-88-337      *Resuelto:* 25 de abril de 1995

*Tristán Reyes-Gilestra*, de *Fiddler, González & Rodríguez*, abogado del peticionario; *Carlos A. López-Lay*, de *López-Lay & Vizcarra*, abogado de los recurridos.

## SENTENCIA

### I

El 7 de enero de 1987 Andrés Martínez Campos, su esposa, Eulalia Trueba Vara de Martínez y la sociedad legal de gananciales integrada por ellos, presentaron ante el Tribunal Superior, Sala de San Juan, una querella contra el Banco de Ponce (en adelante Banco). En ésta se alegó que

Martínez Campos había trabajado para el Banco desde el 2 de febrero de 1972 hasta el 9 de septiembre de 1986, fecha en que fue despedido de su empleo como vicepresidente auxiliar y gerente de la sucursal de Río Piedras. Alegaron que dicho despido fue injustificado y discriminatorio por razón de edad. Al momento del despido, el demandante contaba con cincuenta y nueve (59) años de edad y fue sustituido por un empleado de cuarenta y un (41) años. Se alegó, además, que se hicieron imputaciones falsas y denigrantes sobre la conducta de Martínez Campos en el trabajo.

El señor Martínez Campos reclamó, al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a-185m) (en adelante Ley Núm. 80), la indemnización que ésta provee. Además, solicitó compensación por daños bajo la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) (en adelante Ley Núm. 100). La codemandante Trueba Vara de Martínez reclamó cien mil dólares ($100,000) en compensación por los daños emocionales, pérdida de sueño, angustias y sufrimientos morales que le ocasionaron *las imputaciones contra su esposo.*

El 10 de febrero de 1987 el Banco presentó su contestación a la querella en la cual alegó, en esencia, que el despido de Martínez Campos estuvo justificado y que la Ley Núm. 80, *supra,* dispone el remedio exclusivo en casos de despido. En cuanto a la señora Trueba Vara de Martínez y la sociedad de gananciales, constituida por ella y Martínez, se alegó que no tenían causa de acción para reclamar daños bajo la Ley Núm. 100, *supra.*

El 5 de enero de 1988 el Banco presentó una moción solicitando sentencia sumaria parcial. Alegó que no existía controversia real sobre ningún hecho material y que procedía como cuestión de derecho desestimar las reclamaciones de la señora Trueba Vara de Martínez y la sociedad de gananciales, ya que estas partes no tenían causa de acción

por los daños causados por el despido de Martínez Campos bajo la Ley Núm. 100, *supra*, ni bajo la Ley Núm. 80, *supra*, ni bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.[1]

El 1ro de febrero de 1988 la parte demandante presentó una moción en oposición a la solicitud de sentencia sumaria parcial. Sostuvo, en síntesis, que la señora Trueba Vara de Martínez había sufrido daños como consecuencia del despido de su esposo y que, por lo tanto, tenía una causa de acción personal y separada al amparo del Art. 1802 del Código Civil, *supra*. Acompañó dicho escrito con copias de segmentos de las deposiciones tomadas a Martínez Campos y su esposa. En su deposición, el demandante Martínez reiteró que su despido fue provocado por las alegadas imputaciones de "hostigamiento sexual, hostigamiento laboral y discrimen racial". La señora Trueba Vara de Martínez declaró en la suya sobre los daños que alegadamente sufrió.

El 11 de febrero de 1988 el demandado presentó una réplica a la oposición a moción solicitando sentencia sumaria en la que argumentó que la oposición radicada por los querellantes no había logrado suscitar una genuina controversia de hechos según lo requiere la Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. II. En cuanto a la sociedad

---

[1] En cuanto a la reclamación bajo la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151), específicamente el Banco de Ponce (en adelante el Banco) indicó que el cónyuge del empleado despedido ni la sociedad de gananciales cumplen con el requisito que dispone dicha ley de que el reclamante de los daños sea un empleado o solicitante de empleo. 29 L.P.R.A. sec. 146. Sobre la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a-185m), el Banco señaló que ésta dispone un remedio exclusivo para los casos de despido, lo que excluye la posibilidad de remedio alguno bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Finalmente, sostuvo que la excepción a la disposición del remedio exclusivo, según reconocida en *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977), no era aplicable a la situación de los demandantes. Esta excepción dispone que el patrono responde civilmente por la conducta torticera en que incurra por otros motivos que no sean la mera violación de una disposición de las leyes del trabajo. *Rivera v. Security Nat. Life Ins. Co.*, supra, pág. 527.

El Banco acompañó su moción con copia de un segmento de la deposición tomada a la señora Trueba Vara de Martínez, en la que declaró sobre los sufrimientos causados por el despido de su cónyuge.

de gananciales, el Banco argumentó que ésta compareció como querellante pero no se incluyó ninguna alegación relativa al derecho de la sociedad a reclamar compensación de clase alguna, ni se presentó argumento alguno en oposición al planteamiento de inexistencia de causa de acción de la sociedad. En cuanto a la reclamación de la señora Trueba Vara de Martínez, el Banco sostuvo que ésta carece de una causa de acción bajo la Ley Núm. 80, *supra*, o bajo la Ley Núm. 100, *supra*, ya que dichas leyes sólo conceden una causa de acción al *empleado* despedido sin justa causa o despedido por razones alegadamente discriminatorias. El demandado indicó que los demandantes se limitaron a señalar que la señora Trueba Vara de Martínez sufrió daños, sin fundamentar que tuviera derecho a reclamar compensación por los mismos.

El 31 de marzo de 1988 los demandantes presentaron una dúplica a la réplica del demandado. En ésta alegaron que correspondía a la sociedad legal de gananciales reclamar, bajo la Ley Núm. 100, *supra*, los ingresos dejados de percibir debido al despido. Se reiteraron en sus planteamientos a favor del derecho de la señora Trueba Vara de Martínez a reclamar compensación por sus daños.

El 8 de abril de 1988 se celebró una vista sobre la moción de sentencia sumaria parcial. En ésta, las partes reiteraron sus argumentos al tribunal.

El 10 de mayo de 1988 el tribunal dictó una resolución en la que declaró sin lugar la moción solicitando sentencia sumaria parcial del demandado. En cuanto a la sociedad legal de gananciales el tribunal determinó que, a la luz del Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641, no debía dictarse sentencia sumaria desestimando su reclamación —aun cuando ésta se limitara a exigir la compensación que provee la citada Ley Núm. 80— ya que dicha compensación sustituiría los ingresos dejados de percibir por el querellante Martínez Campos. Sobre la reclamación de la señora Trueba Vara de Martínez declaró que la misma no surgía

exclusivamente de las disposiciones de la Ley Núm. 80, *supra*, o la Ley Núm. 100, *supra*. Además, sostuvo que la reclamación de la codemandante por los daños que alegadamente sufrió, según la prueba documental presentada, no podía ser desestimada por razón de las normas jurisprudenciales establecidas en *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977), y *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986). El demandado presentó moción de reconsideración que fue denegada por el tribunal.

Inconforme con dicho dictamen, el Banco recurrió ante nos mediante Petición de *certiorari* y alegó la comisión de los errores siguientes:

> A. Erró gravemente el honorable tribunal de instancia al declarar sin lugar la moción solicitando sentencia sumaria parcial ya que entendió que los querellantes habían logrado suscitar una genuina controversia de hechos mediante su moción en oposición.
> B. Erró gravemente el honorable tribunal de instancia al concluir que como cuestión de derecho la señora Trueba Vara de Martínez, esposa del empleado despedido tiene una causa de acción bajo el Art. 1802 del Código Civil.
> C. Erró gravemente el honorable tribunal de instancia al concluir que como cuestión de derecho la sociedad legal de gananciales tiene una causa de acción para reclamar los salarios dejados de percibir al amparo del Art. 1301 del Código Civil.

## II

Recientemente en *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1 (1994), tuvimos ante nuestra consideración una situación de hechos parecida al caso de marras. En dicha ocasión concluimos que los remedios que provee la Ley Núm. 100, *supra*, son exclusivamente para los obreros que en su empleo sean víctimas de las prácticas discriminatorias del patrono. No obstante, también en *Santini Rivera v. Serv. Air, Inc.*, supra, señalamos que el hecho de que la Ley Núm. 100, *supra*, no aplicara a los parientes de los obreros no limitaba el derecho de éstos a reclamar bajo otra fuente

independiente los daños que ellos mismos hubieran sufrido como consecuencia del discrimen laboral en contra del obrero. Allí resolvimos, como norma general, que la acción por los alegados daños de un pariente surge bajo el Código Civil, al amparo de los principios de responsabilidad extracontractual, y que dicha acción es independiente de las leyes laborales y no está limitada por éstas. En particular resolvimos que en Puerto Rico los parientes de un empleado que ha sido víctima de trato discriminatorio por su patrono bajo la Ley Núm. 100, *supra*, tienen una causa de acción propia bajo el Art. 1802 del Código Civil, *supra*, para obtener indemnización por los daños que ellos mismos hayan sufrido como consecuencia del referido discrimen laboral. *Santini Rivera v. Serv. Air, Inc.*, supra.

Por consiguiente, el tribunal a quo actuó correctamente al no desestimar la reclamación de la codemandante Trueba Vara de Martínez. A tenor con la normativa antes expuesta, la señora Trueba Vara de Martínez podría tener, entre otras, una causa de acción por sus propios daños, contingente a la acción del obrero discriminado bajo la Ley Núm. 100, *supra*.

Por otro lado, no erró el tribunal de instancia al no desestimar la reclamación de la sociedad legal de gananciales compuesta por los demandantes Martínez Campos y su esposa. Recientemente en *Maldonado v. Banco Central Corp.*, 138 D.P.R. 268 (1995), examinamos el derecho de la sociedad de gananciales para reclamar los ingresos dejados de percibir por el empleado como consecuencia del alegado despido discriminatorio. Allí explicamos que la compensación que concede la Ley Núm. 100, *supra*, sustituye los ingresos dejados de percibir por el empleado y por consiguiente goza del mismo carácter de ganancialidad que le hemos adjudicado al lucro cesante. Resolvimos en *Maldonado v. Banco Central Corp.*, supra, que la sociedad legal de gananciales puede reclamar dicha compensación bajo la Ley Núm. 100, *supra*.

Por los motivos antes expuestos, *se dicta sentencia confirmando la resolución emitida por el Tribunal Superior, Sala de San Juan, el 10 de mayo de 1988. Se devolverá el caso para que continúen los procedimientos de forma compatible con lo aquí resuelto.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. La Juez Asociada Señora Naveira de Rodón disintió con una opinión escrita. El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Rebollo López no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente emitida por la Juez Asociada Señora Naveira de Rodón.

En el caso ante nos la mayoría resuelve que el cónyuge de un empleado que alega haber sido objeto de discrimen por razón de edad tiene derecho a reclamar compensación bajo el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por los alegados daños que el acto discriminatorio le ocasionó. Esta conclusión, al igual que la decisión del Tribunal en *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1 (1994), es contraria a la política pública laboral establecida en Puerto Rico mediante legislación. Por ello, la decisión que hoy toma este Tribunal tiene el efecto de desvirtuar el claro mensaje legislativo establecido en la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) (en adelante Ley Núm. 100). Por considerar que los tribunales no son el foro apropiado para mediante fíat interpretativo ampliar de manera considerable la responsabilidad de los patronos según ha sido establecida en las leyes laborales, disentimos.

## Hechos

El Sr. Andrés Martínez Campos trabajó para el Banco de Ponce (en adelante Banco) desde el 2 de febrero de 1972 hasta el 9 de septiembre de 1986, fecha en la que fue despedido de su empleo. En ese momento se desempeñaba como vicepresidente del Banco y gerente de la sucursal de Río Piedras. El señor Martínez Campos, su esposa Eulalia Trueba Vara de Martínez y la sociedad de gananciales integrada por ambos presentaron el 7 de enero de 1987, en el Tribunal Superior, una querella contra el Banco. En ésta adujeron que el despido del demandante Martínez Campos fue injustificado y discriminatorio por razón de edad.[1] Además, alegaron que al señor Martínez Campos se le hicieron imputaciones falsas y denigrantes sobre conducta constitutiva de hostigamiento sexual.

El señor Martínez Campos reclamó, al amparo de la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. secs. 185a-185m) (en adelante Ley Núm. 80), la indemnización que ésta provee. Además, solicitó compensación por daños bajo la Ley Núm. 100, *supra.* La codemandante Trueba Vara de Martínez reclamó cien mil dólares ($100,000) en compensación por los alegados daños emocionales, pérdida de sueño, angustias y sufrimientos morales que le ocasionaron las imputaciones contra su marido.

El 10 de febrero de 1987 el Banco presentó su contestación a la querella. Alegó que la Ley Núm. 80, *supra*, dispone el remedio exclusivo para casos de despido. Además, sostuvo que la codemandante Trueba Vara de Martínez y la sociedad legal de gananciales no tenían causa de acción alguna para reclamar daños bajo la Ley Núm. 100, *supra.*

El 5 de enero de 1988 el Banco presentó una moción solicitando sentencia sumaria parcial. Alegó que no existía controversia real sustancial de hechos, y que la controver-

---

[1] Al momento del despido el demandante Martínez contaba con cincuenta y nueve (59) años de edad y fue sustituido por un empleado de cuarenta y un (41) años.

sia de derecho se limitaba a determinar si el cónyuge de un empleado despedido y la sociedad de gananciales compuesta por ambos tienen derecho a reclamar daños por razón del despido. El Banco sostuvo que ni la Ley Núm. 80, *supra*, ni la Ley Núm. 100, *supra*, ni el Art. 1802 del Código Civil, *supra*, proveen para que éstos puedan ser resarcidos por los daños que el despido les ocasionó.

En este sentido señaló que la Ley Núm. 100, *supra*, no provee remedios a favor del cónyuge del empleado despedido ni de la sociedad de gananciales porque éstos no cumplen con el requisito que dispone la ley de que el reclamante de los daños sea un empleado o solicitante de empleo. 29 L.P.R.A. sec. 146. Sobre la Ley Núm. 80, *supra*, el Banco indicó que ésta establece un remedio exclusivo para los casos de despido, lo que excluye la posibilidad de indemnización bajo el Art. 1802, *supra*. Finalmente, sostuvo que la excepción a la disposición del remedio exclusivo, según reconocida en *Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977), no es aplicable a la situación de los demandantes. Esta excepción dispone que el patrono responde civilmente por la conducta torticera en que incurra por otros motivos que no sean la mera violación de una disposición de las leyes del trabajo. *Rivera v. Security Nat. Life Ins. Co.*, supra, pág. 527. El Banco acompañó su moción con copia de algunas porciones de la deposición tomada a la codemandante Trueba Vara de Martínez, en la que declaró que nunca había sido empleada ni solicitante de empleo en el Banco. Además, ésta hizo expresiones relativas a los sufrimientos que alegadamente le produjo el despido de su cónyuge.

Los demandantes presentaron una oposición a la moción solicitando sentencia sumaria parcial. Reiteraron su alegación de que la codemandante Trueba Vara de Martínez sufrió daños debido a las alegadas falsas imputaciones que ocasionaron el despido de su marido. Por esta razón, sostuvieron que ésta podía reclamar compensación en vir-

tud del Art. 1802 del Código Civil, *supra*, pues su situación es la contemplada en la opinión de *Rivera v. Security Nat. Life Ins. Co.*, supra. Acompañaron su moción con copia de parte de las deposiciones tomadas al señor Martínez Campos y a su esposa. En su deposición, el demandante Martínez Campos reiteró que su despido fue provocado por las alegadas imputaciones de hostigamiento sexual. La señora Trueba Vara de Martínez declaró sobre los daños que alegadamente sufrió.

El 11 de febrero de 1988 el demandado presentó una réplica a la oposición a la moción solicitando sentencia sumaria en la que señaló que los demandantes no hicieron alegación alguna relativa al derecho de la sociedad legal de gananciales a reclamar compensación, sino que meramente se limitaron a incluirla como querellante. Además, que no se opusieron al planteamiento del demandado sobre la carencia de derecho de ésta. En cuanto a la reclamación de la codemandante Trueba Vara de Martínez, el demandado sostuvo que los demandantes se limitaron a señalar que ella sufrió daños, sin fundamentar que tuviera derecho a reclamar compensación. El Banco añadió que el hecho de que la codemandante sufriera daños no significa que tenga derecho a ser compensada. Sobre el particular expresó: "[e]s obvio que todo despido, en mayor o menor grado, causa daños. Sin embargo, *como cuestión de derecho*, en nuestro ordenamiento el cónyuge de un empleado despedido no tiene una causa de acción que esgrimir reclamando daños ocasionados por el despido de su cónyuge, *ni bajo las disposiciones de la Ley Núm. 100, ni bajo las disposiciones de cualquier otro estatuto.*" (Énfasis en el original.) Finalmente, reiteró que la excepción de *Rivera v. Security Nat. Life Ins. Co.*, supra, no es de aplicación al caso y que el remedio de la Ley Núm. 100, *supra*, es sólo para empleados y solicitantes de empleo.

Por su parte, los demandantes presentaron el 31 de marzo de 1988 una dúplica a la réplica del demandado.

Sostuvieron que a la sociedad legal de gananciales le corresponde reclamar, bajo la Ley Núm. 100, *supra*, los ingresos dejados de percibir debido al despido. Se reiteraron, además, en sus planteamientos a favor del derecho de la codemandante Trueba Vara de Martínez a reclamar compensación por sus alegados daños.

El 8 de abril de 1988 se celebró una vista sobre la moción de sentencia sumaria parcial. En ésta, las partes reiteraron sus argumentos al tribunal.

El 10 de mayo de 1988 el tribunal dictó una resolución en la que declaró sin lugar la moción solicitando sentencia sumaria parcial del demandado. Concluyó que la sociedad legal de gananciales puede reclamar la indemnización que dispone la Ley Núm. 80, *supra*. Ello por razón de que esta indemnización es un sustituto de los ingresos que el empleado despedido hubiese recibido, y la sociedad de gananciales es la acreedora de los sueldos de los cónyuges, según dispone el Art. 1301 del Código Civil, 31 L.P.R.A. sec. 3641. Sobre la reclamación de la señora Trueba Vara de Martínez declaró que la misma no surgía exclusivamente de las disposiciones de la Ley Núm. 80, *supra*, o la Ley Núm. 100, *supra*. Además, sostuvo que la reclamación de la codemandante por los daños que alegadamente sufrió, según la prueba documental presentada, no podía ser desestimada por razón de las normas jurisprudenciales establecidas en *Rivera v. Security Nat. Life Ins. Co.*, supra, y *Arroyo v. Rattan Specialties, Inc.*, 117 D.P.R. 35 (1986). El demandado presentó moción de reconsideración que fue denegada por el tribunal.

De la determinación anterior recurrió el Banco ante nos mediante petición de *certiorari*. En su recurso planteó la comisión de los errores siguientes:

> A. Erró gravemente el honorable tribunal de instancia al declarar sin lugar la moción solicitando sentencia sumaria parcial ya que entendió que los querellantes habían logrado suscitar una genuina controversia de hechos mediante su moción en oposición.

B. Erró gravemente el honorable tribunal de instancia al concluir que como cuestión de derecho la señora Trueba Vara de Martínez, esposa del empleado despedido tiene una causa de acción bajo el Art. 1802 del Código Civil.

C. Erró gravemente el honorable tribunal de instancia al concluir que como cuestión de derecho la sociedad legal de gananciales tiene una causa de acción para reclamar los salarios dejados de percibir al amparo del Art. 1301 del Código Civil.

Este Tribunal decidió revisar y expedimos el auto.

## I

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone el procedimiento y las normas a seguir por el tribunal para determinar si debe dictarse sentencia sumariamente. El propósito de esta regla es resolver justa, rápida y económicamente los pleitos en que, por no existir una controversia real de hechos, resulta innecesario celebrar un juicio en su fondo. *González v. Alicea, Dir. Soc. Asist. Legal*, 132 D.P.R. 638 (1993).

Tanto la parte reclamante, como aquella contra la que se reclama, pueden presentar una solicitud para que se dicte sentencia sumaria a su favor. Reglas 36.1 y 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III. La parte que hace esta solicitud tiene que demostrar, *"fuera de toda duda*, la inexistencia de una controversia real sobre todo hecho pertinente que a la luz del derecho sustantivo determinaría una sentencia a su favor como cuestión de ley". (Énfasis suplido y citas omitidas.) *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 D.P.R. 115 (1992).

Para que el tribunal pueda dictar sentencia sumariamente, la parte promovente tiene que cumplir con dos (2) requisitos:

[1. que de] las alegaciones ... [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, [y] las declaraciones juradas, si las hubiere, [surja] que no hay controversia real sustancial en cuanto a ningún hecho material[,] y

[2.] que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Véanse: *Tello, Rivera v. Eastern Airlines*, 119 D.P.R. 83, 86 (1987); *M.J.C.A., menor v. J.L.E.M., menor*, 124 D.P.R. 910 (1989); *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716 (1994).

Ahora bien, la parte promovente también puede presentar una moción de sentencia sumaria alegando que la parte promovida no cuenta con la evidencia necesaria para probar su reclamación. Recientemente en *Medina v. M.S. & D. Química P.R., Inc.*, supra, analizamos esta modalidad y expusimos las normas aplicables.

Por su parte, el promovido, que quiere evitar que se dicte sentencia sumaria en su contra, tiene que demostrar, mediante hechos específicos, la existencia de una controversia real que debe ser dilucidada en el juicio. A estos efectos la Regla 36.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III, señala:

> Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma *tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio.* De no hacerlo así, se dictará en su contra la sentencia sumaria si procediere. (Énfasis suplido.) Véanse: *Tello Rivera v. Eastern Airlines*, supra, pág. 87; J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1979, Vol. II, pág. 191.

Sin embargo, la presentación de declaraciones juradas que sólo contengan conclusiones, "sin hechos específicos que las apoyen, no tienen valor probatorio, siendo por lo tanto, insuficientes para demostrar la existencia de lo que allí se concluye". *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 728 (1986).

En nuestro caso, la parte promovente, el Banco, alegó en su moción de sentencia sumaria que los alegados daños

sufridos por la codemandante Trueba Vara de Martínez se debieron únicamente al despido de su marido. Acompañó la moción con porciones de la deposición tomada a ésta en la cual aparecen expresiones en ese sentido.

Los demandantes, en su oposición, señalaron que los alegados daños de la señora Trueba Vara de Martínez son producto de una difamación contra su marido. A estos efectos señalaron, *únicamente*, que "[l]as imputaciones falsas y denigrantes contra 'MARTINEZ' aparecen en cartas y documentos contentivos de alegadas quejas difamatorias de empleadas de la parte demandada, quienes expresan que alegadamente, 'MARTINEZ' se prospasaba [sic] con ellas al hacerles insinuaciones y acercamientos de tipo sexual". No acompañaron estos documentos, ni alegaron ni acompañaron documentos para demostrar que, como cuestión de hecho, las alegadas manifestaciones difamatorias fueron publicadas o divulgadas, elemento éste esencial de la causa de acción por libelo. Véanse: *Porto y Siurano v. Bentley P.R., Inc.*, 132 D.P.R. 331 (1992); *Parrilla v. Ranger American of P.R.*, 133 D.P.R. 263 (1993). Tampoco presentaron hechos para controvertir lo establecido en la moción del demandado a los efectos de que los alegados daños sufridos por la señora Trueba Vara de Martínez se debieron únicamente al despido de su marido. No demostraron, mediante hechos específicos, avalados por documentos admisibles en evidencia, que los daños reclamados se debiesen, según alegaban, a la conducta torticera (libelo) de los empleados del demandado contra Martínez y los daños que esto le ocasionó a ella.

Una vez la parte demandada presenta una moción de sentencia sumaria acompañada de documentos admisibles en evidencia que apoyan una de sus defensas, para combatirla, los demandantes vienen obligados a demostrar, con documentos igualmente admisibles en evidencia, que dicha defensa no puede prosperar. En el caso de autos, esto significa que los demandantes promovidos venían obligados a

demostrar que contaban con evidencia para probar que los alegados daños surgieron como consecuencia de la conducta libelosa torticera de los demandados. Ante una ausencia de prueba, el tribunal debió desestimar la causa de acción por libelo, en la que la codemandante Trueba Vara de Martínez fundamentaba su derecho a reclamar daños, y pasar a examinar la controversia de derecho planteada por el demandado. Es decir, si el cónyuge de un empleado despedido tiene derecho a recibir compensación por los daños que el despido le ocasionó. Dicha controversia fue considerada por este Tribunal, resolviendo en la afirmativa. Como señaláramos, disentimos de la posición asumida por la mayoría.

## II

En Puerto Rico no existe prohibición per se contra el despido. "[C]omo regla general, a un obrero o trabajador contratado sin tiempo determinado se le puede despedir por justa causa, sin causa o por causa injustificada y ... bajo estas circunstancias el único derecho que le asiste es el provisto por la Ley Núm. 80 ...."(²) *Arroyo v. Rattan Specialties, Inc.*, supra, pág. 65. Véase *Porto y Siurano v. Bentley P.R., Inc.*, supra, pág. 342. No existe un deber del patrono de no despedir a sus empleados. La Ley Núm. 80, *supra*, no prohibe el despido, lo que sanciona es el despido injustificado. Para ello provee una indemnización al obrero equivalente a un (1) mes de sueldo más una (1) semana de compensación por cada año de servicio al patrono. 29 L.P.R.A. sec. 185(a). Esta indemnización es el único remedio disponible. Significa que el empleado no puede recibir indemnización por estos daños al amparo del Art. 1802,

---

(²) Para un historial sobre la indemnización por despido injustificado con relación a empleados contratados por tiempo indeterminado, véase *Vélez Rodríguez v. Pueblo Int'l, Inc.*, 135 D.P.R. 500 (1994).

*supra.* Si el trabajador no tiene derecho a compensación por los daños que el despido le ocasionó, mucho menos su cónyuge podrá reclamar indemnización por los daños que el despido le produjo.

Sin embargo, hemos reconocido dos situaciones en las que el obrero despedido puede recobrar daños bajo el citado Art. 1802. En *Rivera v. Security Nat. Life Ins. Co.*, supra, pág. 527, establecimos que el remedio por despido injustificado "no excluy[e] la responsabilidad civil de un patrono por conducta torticera en que incurriere *por otros motivos que no sean la mera violación de una disposición de las leyes del trabajo.* 31 L.P.R.A. sec. 5141". (Énfasis suplido.) "En otras palabras, en relación con el mero despido sin justa causa, el empleado solamente tiene disponible el remedio que provee la Ley Núm. 80, ante; ello no obstante, si con el despido concurren otras actuaciones torticeras, *que sean independientes al mismo*, entonces procede que se responsabilice al patrono a base de dicha conducta." (Énfasis suplido.) *Porto y Siurano v. Bentley P.R., Inc.*, supra, pág. 342. En este caso el obrero despedido será compensado por los daños que *el acto torticero del patrono* le ocasionó.([3])

En *Arroyo v. Rattan Specialties, Inc.*, supra, señalamos otra situación en la que el obrero despedido puede instar una reclamación en daños en virtud del Art. 1802, *supra.* Esto ocurre cuando "el despido se haga con el propósito y la intención de frustrar o subvertir, o que tenga el efecto de frustrar o subvertir una clara política pública", *e.g.* los de-

---

([3]) En Argentina existe una legislación sobre el despido injustificado parecida a la nuestra. Ella provee al trabajador despedido injustificadamente una indemnización equivalente a un (1) mes de sueldo por cada año de servicio o fracción mayor de tres (3) meses. A ésta se le denomina *indemnización forfataria.* Además, al igual que nosotros, se ha reconocido el derecho del trabajador a reclamar en daños y perjuicios por actuaciones torticeras del patrono que sean independientes del despido. Sobre el mismo se expresa E.E. Martorell en su libro *Indemnización del daño moral por despido*, Buenos Aires, Ed. Hammurabi, 1985.

Véanse, además: G. Cabanellas, *Tratado de derecho laboral*, Buenos Aires, Ed. El Gráfico Impresores, 1949, T. II, págs. 726–727, 813–814; V.H. Álvarez Chávez, *Reparación del daño moral en el derecho del trabajo*, Buenos Aires, Ed. Lener, 1987, págs. 58–74.

rechos constitucionales del trabajador. Íd., pág. 65. Véase *Porto y Siurano v. Bentley P.R., Inc.*, supra.

En el caso de autos no se han presentado hechos que sustenten alguna de estas reclamaciones de excepción al amparo del Art. 1802, *supra*. Además, como señaláramos anteriormente, la codemandante Trueba no tiene derecho a reclamar indemnización por los daños que el despido de su cónyuge le pudo haber ocasionado. Estas conclusiones, sin embargo, no disponen del caso. El señor Martínez alega que fue objeto de discrimen por razón de edad en violación de la Ley Núm. 100, *supra*. Procede, pues, que examinemos si su cónyuge, la codemandante Trueba, tiene derecho a recibir compensación por los daños que el alegado discrimen por razón de edad le ocasionó, y si la sociedad de gananciales compuesta por ambos puede reclamar bajo la Ley Núm. 100, *supra*, los salarios dejados de percibir por el demandante.

## III

La Ley Núm. 100, *supra*, establece una prohibición contra el discrimen en el empleo.[4] Dicha ley no tiene dispo-

---

[4] La Ley Núm. 100 de 30 de junio de 1959 dispone en su parte pertinente:

"Todo patrono que despida, suspenda o discrimine contra un empleado suyo en relación a su sueldo, salario, jornal o compensación, términos, categorías, condiciones o privilegios de su trabajo, o que deje de emplear o rehúse emplear o reemplear a una persona, o limite o clasifique sus empleados en cualquier forma que tienda a privar a una persona de oportunidades de empleo o que afecten su *status* como empleado, *por razón de edad*, según ésta se define más adelante, raza, color, sexo, origen social o nacional, condición social, ideas políticas o religiosas del empleado o solicitante de empleo:

"(a) *Incurrirá en responsabilidad civil*

"(1) *por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo*;

"(2) o por una suma no menor de cien (100) dólares ni mayor de mil (1,000) dólares, a discreción del tribunal, si no se pudieren determinar daños pecuniarios;

"(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien (100) dólares, y [sic]

"(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares, o cárcel por un término no menor de treinta (30) días ni mayor de noventa (90) días, o ambas penas, a discreción del tribunal.

sición alguna referente a compensación al cónyuge discriminado. El texto e historial legislativo de la Ley Núm. 100, *supra*, claramente señala que su propósito es *proteger a los trabajadores y aspirantes de empleo contra el discrimen en la relación de empleo*. Por otra parte, aunque el historial legislativo de la Ley Núm. 100, *supra*, guarda silencio sobre el alcance y contenido del remedio provisto por la ley, *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 200 (1988), es evidente que toda ella, aun sus remedios debe interpretarse a la luz de su objetivo principal: la protección a los trabajadores y aspirantes a empleo.[5] Además, las leyes enmendatorias de la Ley Núm. 100, *supra*, no han alterado su esquema de remedios sino que reafirman el objetivo principal de la Legislatura de proveer un mecanismo de protección específicamente para los trabajadores y aspirantes a empleo. Asimismo, el Departamento del Trabajo y Recursos Humanos en el Art. 2 del Reglamento General para Administrar la Ley Núm.

---

"De igual modo, constituirá una práctica discriminatoria e incurrirá en la responsabilidad civil y penal antes expuesta, todo patrono que cometa cualquiera de los actos que se señalan en el primer párrafo de esta sección por razón de tratarse de una persona casada con un empleado o empleada de su empresa o negocio. Esta disposición se aplicará tanto a aspirantes a empleo como a aquellas personas ya empleadas por el patrono que contraigan matrimonio entre sí.

"No obstante lo dispuesto en el párrafo anterior, en aquellas situaciones en las cuales exista un claro conflicto de funciones por razón del vínculo matrimonial, que sustancialmente afecte adversamente al funcionamiento de la empresa, el patrono estará obligado a hacer un ajuste o acomodo razonable en las funciones de los empleados o aspirantes a empleo. Esta práctica será aplicable a empresas o negocios que tengan cincuenta (50) o más empleados.

"Lo anterior debe hacerse de tal forma que no afecte el derecho del patrono a reglamentar razonablemente las condiciones de trabajo de matrimonios en el mismo departamento, división o facilidades físicas.

"En esa determinación deberán considerarse los siguientes factores: tamaño de las facilidades físicas de la empresa y número de empleados, el organigrama, jerarquía y línea de mando, las necesidades físicas de la empresa y los problemas o dificultades específicos que suscitaría el matrimonio.

"El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate." (Énfasis suplido.) Art. 1 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 146.

[5] Sobre el historial legislativo y el debate del Sust. P. del S. 331, proyecto que dio origen a la Ley Núm. 100, *supra*, 29 L.P.R.A. secs. 146–151, véase nuestra opinión disidente en *Santini Rivera v. Serv Air, Inc.*, 137 D.P.R. 1 (1994).

100 de 25 de marzo de 1988, define el término "perjudicado" como "empleado(s) o aspirante(s) a empleo contra quien(es) se haya practicado un discrimen en el empleo a tenor con la Ley Núm. 100".

En nuestra opinión disidente en *Santini Rivera v. Serv. Air, Inc.*, supra, examinamos la controversia ante nos al amparo de los estatutos federales que prohíben el discrimen en el empleo por razón de edad. Señalamos que la ley federal conocida como *Age Discrimination in Employment Act* (en adelante A.D.E.A.), 29 U.S.C. sec. 621 y ss., dispone que sólo la persona agraviada por una violación del estatuto puede instar acción judicial en reclamación de remedios. 3A *Larson y Larson, Employment Discrimination* Sec. 102.31(a), pág. 21–276.10. Sin embargo, dicha ley no define el concepto de "persona agraviada". *Larson y Larson*, supra, pág. 21–276.13.

El Título VII del Estatuto de Derechos Civiles de 1964 (42 U.S.C. sec. 2000e-5(f)(1)), requiere que el demandante haya sufrido algún daño en su relación de empleo debido a las prácticas discriminatorias del demandado.

En algunos casos se ha permitido que cónyuges de empleados insten acciones judiciales por discrimen bajo el Título VII cuando éstos se vieron afectados en su empleo por la práctica discriminatoria del patrono-demandado.[6] Así, en *De Medina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978), se permitió que la esposa de un empleado presentara una reclamación por represalia contra el demandado. La esposa, quien era una aspirante a empleo en la agencia federal demandada, alegó que su solicitud de empleo fue rechazada en represalia por las actividades antidiscriminatorias de su esposo en la misma agencia federal. Íd., págs. 579–581. Véase N. Morrison Torrey, *Indirect discri-*

---

[6] Aunque los casos que discutimos se dan en el contexto de la acción por represalia, y en este sentido son distintos al caso de autos, consideramos que los principios que exponen sobre el derecho a compensación del cónyuge del empleado discriminado nos son orientadores.

*mination under Title VII: Expanding male standing to sue for injuries received as a result of employer discrimination against females*, 64 Wash. L. Rev. 365, 382 (1989). En *Nicol v. Imagematrix, Inc.*, 773 F. Supp. 802 (E.D. Va. 1991), un esposo, que a su vez era empleado del demandado, alegó haber sido despedido debido a que su esposa, también empleada del demandado, se encontraba embarazada. El tribunal resolvió que el esposo-empleado podía reclamar, bajo el Título VII, por discrimen por razón de sexo. *Nicol v. Imagematrix, Inc.*, supra, pág. 805.

La jurisprudencia de A.D.E.A. también ha requerido, como condición para instar una reclamación judicial, que el empleo del demandante se haya visto afectado por las actuaciones del demandado. En *Asklar v. Honeywell, Inc.*, 95 F.R.D. 419 (1982), se denegó la reclamación por represalia de la viuda de un empleado contra el patrono de éste. El tribunal distinguió el caso de *De Medina v. Reinhardt*, supra, y señaló que la señora Asklar no sufrió perjuicio en relación de empleo alguna por razón de las alegadas actuaciones del patrono-demandado.[7]

El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico ha resuelto, con relación a quién puede instar una reclamación bajo A.D.E.A., que la sociedad legal

---

[7] En *Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 424–425 (1982), señaló:

"Standing to sue, under the nearly identical retaliation provision of Title VII, 42 U.S.C. Sec. 2000e-3(a), has logically been extended to former employees, e.g., *Pantchenko v. C.B. Dolge Co.*, 581 F.2d 1052 (2d Cir. 1978). Similarly, the protection of the Title VII retaliation provision has been extended to third party reprisals. In *De Medina v. Reinhardt*, 444 F. Supp. 573 (D.D.C. 1978) the court permitted an employee to assert a retaliation claim based on allegations that the retaliation against her was motivated as a reprisal for her husband's protected antidiscrimination activities. *Even in this claim under the retaliation provision, the action was brought by an employee. No court has extended the scope of a retaliation provision beyond the bounds of an employer—employee relationship.* See B. Schlei & P. Grossman, *Employment Discrimination Law*, 838 (1976). See also, id. at 416 n. 2. *The legislative history does not indicate any intent contrary to the plain meaning of the ADEA retaliation provision. Mrs. Asklar has never been an employee or an applicant for employment at Honeywell, nor is there any claim that she has been denied employment with the defendant because of retaliatory motivation. Accordingly, the Court finds that Mrs. Asklar has no standing to sue under Sec. 623(d) of the ADEA.*" (Énfasis suplido.)

de gananciales no puede reclamar remedio alguno bajo dicho estatuto.([8])

En cuanto a las leyes estatales que sancionan el discrimen en el empleo en los casos en los que se ha planteado la controversia de autos, la decisión ha sido en la negativa. En *Pacheco v. Clifton*, 311 N.W.2d 801 (1981), se interpretó el *Michigan Fair Employment Practices Act* (en adelante F.E.P.A.) a estos fines. El tribunal concluyó que ni el estatuto ni su historial legislativo favorecían una determinación a favor del cónyuge reclamante.([9]) En *Graffius v. Control Data Corp.*, 447 N.W.2d 215 (1989), el tribunal se negó a reconocerle un remedio al esposo de la empleada discriminada porque el *Minnesota Human Rights Act* no lo autorizaba. *Graffius v. Control Data Corp.*, supra, pág. 217.

Del examen de estas leyes y su jurisprudencia interpretativa podemos concluir que para reclamar los remedios de éstas se requiere que las alegadas actuaciones discriminatorias del patrono-demandado hayan perjudicado de alguna manera una relación de empleo, presente, pasada o

---

([8]) En *Paredes Figueroa v. Int. Air Serv. of Puerto Rico*, 662 F. Supp. 1202, 1204 (D.P.R. 1987), se expresó:

"Although we agree with plaintiff that under Puerto Rico law a conjugal partnership is a distinct legal entity with a capacity to sue and be sued, we are hardpressed to extend that description to define Mr. Paredes and Mrs. Despradel de Paredes' conjugal partnership as an 'employee' under the ADEA since *no employer—employee relationship existed between defendant and the conjugal partnership.*" (Énfasis suplido.)

([9]) En *Pacheco v. Clifton*, 311 N.W.2d 801, 807 (1981), se señaló:

"In the instant case, Mrs. Pacheco does not claim that General Motors discriminated against her. Rather, her claim for damages is derivative in nature. In the absence of statutory authority for an employee's spouse to maintain a private employment discrimination suit, we hold that Mrs. Pacheco's claims must be dismissed from the action.

"Finally, to the extent that the standing requirements of the FEPA are viewed as ambiguous, we note that the primary objective of statutory construction is to ascertain and give effect to legislative intent. *Melia v. Employment Security Comm.*, 346 Mich. 544, 562, 78 N.W.2d 273 (1956). Our reading of the statute persuades us that the Legislature did not intend that the spouse of a victim of discrimination has standing to sue under the statute in question for damages resulting to her from that discrimination."

potencial, del demandante. En ausencia de este elemento, el demandante no progresará en su reclamación.

En fin, tal y como señalamos en nuestra opinión disidente en *Santini Rivera v. Serv. Air, Inc.*, supra, el texto de la Ley Núm. 100, *supra*, establece claramente que la indemnización disponible es únicamente para el empleado o solicitante de empleo. Dicha conclusión está completamente acorde con el propósito de la ley de proteger contra el discrimen, específicamente, a los trabajadores y aspirantes a empleo, según surge de su historial legislativo. Ya en *Ibáñez v. Molinos de P.R., Inc.*, 114 D.P.R. 42, 50 (1983), reconocimos que al amparo de la Ley Núm. 100, *supra*, tiene causa de acción "toda persona que hubiese sido despedida o de otro modo se viere negativamente afectada en su empleo por motivo de su edad, raza, color, religión, origen o condición social".

El examen del texto de la ley, su historial legislativo y nuestra jurisprudencia nos señala que la indemnización que dispone la Ley Núm. 100, *supra*, en su Art. 1 (29 L.P.R.A. sec. 146) es únicamente para aquellas personas que se vean perjudicadas en su empleo por razón de las prácticas discriminatorias del patrono. La Ley Núm. 100, *supra*, no le reconoce derecho a compensación alguna a personas que no hayan sufrido perjuicio en su empleo por razón del discrimen patronal. La codemandante Trueba Vara de Martínez declaró en su deposición que nunca había sido empleada ni solicitante de empleo en el Banco demandado. Ante estas circunstancias el remedio de la Ley Núm. 100, *supra*, no la cobija.

## IV

La mayoría de este Tribunal resuelve que el cónyuge de un empleado que alega haber sido objeto de discrimen por razón de edad, en violación de la Ley Núm. 100, *supra*,

puede reclamar compensación al amparo del Art. 1802 del Código Civil, *supra*, por los daños que el alegado acto discriminatorio le ocasionó.([10]) No estamos de acuerdo.

En primer lugar examinaremos, por su valor persuasivo, cómo se han tratado controversias similares en la jurisdicción federal y en algunas jurisdicciones estatales en Estados Unidos.([11]) En estas jurisdicciones se ha planteado si el cónyuge del empleado discriminado puede instar una reclamación en daños por *loss of consortium*.([12]) Esta reclamación del *common law* surge cuando un tercero causa daño a una persona casada y este daño menoscaba las relaciones matrimoniales entre los cónyuges.([13])

Tanto la jurisprudencia A.D.E.A., como la del Título VII, se ha negado a reconocer una reclamación por *loss of consortium* a favor del cónyuge del empleado víctima de discrimen. *Reed v. Johnson Controls, Inc.*, 704 F. Supp. 170, 171–172 (E.D. Wis. 1989) (A.D.E.A.); *Torres v. Cla-*

---

([10]) Dispone el Art. 1802 que "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". 31 L.P.R.A. sec. 5141.

([11]) Aunque "el derecho de daños en Puerto Rico se rige, tanto en su forma como en su contenido, por el sistema del derecho civil...", *Valle v. American Inter. Ins. Co.*, 108 D.P.R. 692, 695 (1979), podemos acudir, a manera persuasiva, a la jurisprudencia norteamericana. *J.A.D.M. v. Centro Com. Plaza Carolina*, 132 D.P.R. 785 (1993).

([12]) Inicialmente esta acción sólo podía ser ejercitada por el esposo. "In the context of the marriage relationship, the law recognizes that an injury to a married person may result in a compensable loss to the injured person's spouse, i.e. a loss consortium (citas omitidas). The loss of consortium is the loss or impairment of the rights and benefits one is entitled to receive from one's spouse as part of the marital relationship." Shepard's Causes of Action, 2da ed., Colorado Ed. Shepard's McGraw-Hill, 1993, Vol. 1, pág. 422.

([13]) "The term 'consortium' is usually defined as encompassing the services of the wife, the financial support of the husband, and the variety of intangible relations which exist between spouses living together in marriage. These intangible elements are generally described in terms of 'affection, society, companionship and sexual relations'. These intangibles have also been defined as the 'constellation of companionship, dependence, reliance, affection, sharing and aid which are legally recognizable, protected rights arising out of the civil contract of marriage'.

"The term 'services' is generally taken to include the performance by a spouse of household an domestic duties." (Cita omitida.) S.M. Speiser, Ch.F. Krause y A.W. Gans, *The American law of Torts*, Rochester, Ed. Lawyers Cooperative Pub. Co., 1985, Vol. 2, pág. 576; F.V. Harper, F. Jams, Jr. y D.S. Gray, *The Law of Torts*, 2da ed., Boston, Ed. Little, Brown and Company, 1986, Vol. 2, pág. 550.

*yton*, 25 F.E.P. 998, 1000 (S.D. Cal. 1978); *Pryor v. United States Gypsum Co.*, 585 F. Supp. 311, 317 (W.D. Mo. 1984) (Título VII). El fundamento principal que se esbozó en estos casos en contra del reconocimiento de dicha acción es que ésta es una reclamación en daños y las leyes federales internacionales no proveen ese tipo de remedio.([14])

Al examinar si se han permitido reclamaciones por *loss of consortium* debido a violaciones de leyes estatales que prohiben el discrimen en el empleo, encontramos que no existe uniformidad sobre el particular. En Ohio y Michigan se ha acogido este tipo de reclamación. En *Wang v. GoodYear Tire and Rubber Co.*, 587 N.E.2d 387, 391 (1990), aunque se desestimó la reclamación de la esposa porque la alegación de discrimen del cónyuge-empleado no prosperó, el tribunal reconoció que era plausible instar una reclamación por *loss of consortium* por violación a la ley estatal que prohíbe el discrimen en el empleo. Ahora bien, el caso de Michigan requiere un examen más detenido. Como ya señaláramos, en *Pacheco v. Clifton*, supra, pág. 807, el tribunal determinó que la ley estatal contra el discrimen en el empleo (F.E.P.A.) no concede remedio alguno al cónyuge del empleado discriminado. Luego, en *Boscaglia v. Michigan Bell Tel. Co.*, 362 N.W.2d 642 (1984), se determinó que el cónyuge del empleado discriminado no tiene derecho a reclamar por *loss of consortium*. "Cynthia Pacheco argues that she possessed a preexisting common-law loss of consortium action that was triggered when the Legislature granted statutory protection to the right to be free from employment discrimination.... The question once again is one of *legislative intent*. Absent a legislative intent to provide such a derivative cause of action, the spouse of a person subjected to discrimination does not have a right to recovery." (Énfasis suplido.) *Boscaglia v. Michigan Bell Tel.*

---

([14]) En 1991 se aprobó *The Civil Rights Act of 1991*. Esta ley enmendó el Título VII para permitir compensación por daños en casos de discrimen intencional. Véase Larson y Larson, *The Civil Rights Act of 1991*, Vol. 1, págs. 7, 10, 14 y ss.

*Co.*, supra, págs. 649–650. Tanto *Pacheco v. Clifton*, supra, como *Boscaglia v. Michigan Bell Tel. Co.*, supra, fueron decididos a la luz de una ley estatal que prohibía específicamente el discrimen en el empleo. Posteriormente, esta ley fue derogada y en su lugar se aprobó una ley general contra el discrimen: *Elliot-Larsen Civil Rights Act*, M.C.L. sec. 37.2101 *et seq.*; M.S.A. sec. 3.548(101) *et seq.* Al examinar esta controversia en relación con la nueva ley, el tribunal determinó que la reclamación por *loss of consortium* es compatible con la misma.

> ... The question is not whether a cause of action is available under the Civil Rights Act, but whether there is anything in the act which would preclude this independent cause of action. We believe that this question must be answered in the negative.
>
> .    .    .    .    .    .    .
>
> *The Civil Rights Act, 1976 P.A. 453, which supplanted the FEPA, is not limited to remedying discrimination in employment, but extends to public accommodations, services, and educational institutions.* In language befitting this comprehensive scheme, art. 8 of the Civil Rights Act includes its own civil action enforcement provision:
>
> "A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both." M.C.L. Sec. 37.2801(1); M.S.A. Sec. 3.548(801)(1).
>
> *Nothing in the language of this provision suggests a legislative intent to preclude a cause of action for loss of consortium.*([15])

---

([15]) Continuó expresando el Tribunal:

"Properly perceived, Craig Eide's claim for loss of consortium is not a claim under the Civil Rights Act, but a claim at common law.

"Assuming that any construction of Sec. 801(1) of the act is necessary, it must first be compared with the correlative language of its statutory predecessor, the FEPA. The opening clause of the FEPA, Sec. 7(b) was: 'Any individual claiming to be aggrieved by an alleged unlawful employment practice...' As we emphasized in *Boscaglia*, the complainant in a derivative cause of action, such as loss of consortium, does not claim to be aggrieved by an alleged unlawful employment practice, but by the subsequent injury to the impaired spouse. In contrast, the opening clause of the civil enforcement provision of the Civil Rights Act is: 'A person alleging a violation of this act...' It is presumed that a change of language in a statute is intended to change the result of the statute. We would, therefore, construe this broadening of the statutory language to imply a broadening of the remedy to which it is addressed. Such a construction is also consistent with the well-established rule that remedial statutes are to be liberally construed to suppress the evil and advance the remedy. Therefore, in our view, neither the clear language of the act nor conventional rules of statutory

La ley de derechos civiles vigente en Michigan y bajo la cual se reconoció la acción por *loss of consortium* se parece más a la Ley de Derechos Civiles de Puerto Rico que a la Ley Núm. 100, *supra.* Consideramos que el razonamiento en *Pacheco v. Clifton,* supra, y en *Boscaglia v. Michigan Bell Tel. Co.,* supra, al analizar el derogado estatuto que prohibía el discrimen en el empleo, está conforme con nuestra situación bajo la Ley Núm. 100, *supra,* y que lo establecido en *Eide* y, por lo tanto, resulta más persuasivo.

Como anticipáramos, existen jurisdicciones que no reconocen una reclamación por *loss of consortium* por violaciones a sus leyes contra el discrimen en el empleo. Éstas son Massachusetts, Nueva York y Minnesota. Véanse: *Long v. American Intl. Adjustment Co.,* 47 F.E.P. 1100, 1102 (D. Mass. 1986); *Tauriac v. Polaroid Corp.,* 716 F. Supp. 672, 674 (D. Mass. 1989); *Belanoff v. Grayson,* 471 N.Y.S.2d 91, 94 (1984); *Spoon v. American Agriculturalist, Inc.,* 502 N.Y.S.2d 296, 299 (1986); *Mehtani v. New York Life Ins. Co.,* 545 N.E.2d 631 (1989). En *Graffius v. Control Data Corp.,* supra, el tribunal determinó que tanto el texto como el propósito de la ley no favorecían el reconocimiento de una acción por *loss of consortium.*([16])

---

construction support the majority's view that Sec. 801(1) precludes a claim for loss of consortium.

> .    .    .    .    .    .    .    .    .

"In our view, the comprehensive nature of the Civil Rights Act makes it qualitatively different from any predecessor statute, such as the FEPA, and far greater than the sum of these 'parts'. The FEPA remedies provision was modeled after the federal Fair Employment Practices Act, which was in turn modeled after the Labor–Management Relations Act, 29 U.S.C. sec. 160. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 417–419, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). All are essentially administrative schemes that focus upon the employment relationship, and the equitable remedies provided therein were designed, to address problems in that relationship. See 1955 P.A. 251, Sec. 7(h). The Civil Rights Act is much broader in scope." (Énfasis suplido y citas omitidas.) *Eide v. Kelsey-Hayes Co.,* 427 N.W.2d 488, 489, 491–492 (1988). Véase, además, *Milnikel v. Mercy-Memorial Medical Ctr.,* 454 N.W.2d 132, 133–134 (1989).

([16]) En *Graffius v. Control Data Corp.,* 447 N.W.2d 215, 217 (1989), el tribunal expresó:

"A civil cause of action under the Minnesota Human Rights Act is authorized to grant the forms of relief enumerated in Minn.Stat. Secs. 363.071, subd. 2 and 363.14, subd. 2. Lost consortium is not an authorized remedy. Further, compensatory dama-

Del examen de esta jurisprudencia estatal podemos colegir, que tanto los estados que han permitido la reclamación por *loss of consortium*, como aquellos que se han negado a reconocerla, han basado su determinación en un análisis del texto e historial legislativo de la ley en cuestión, *Eide v. Kelsey Hayes Co.*, supra; *Graffius v. Control Data Corp.*, supra, reconociéndola como norma general cuando el estatuto es uno de carácter general y negándola cuando es específico. Consideramos que éste es el análisis más apropiado para determinar si se le debe reconocer al cónyuge del empleado alegadamente discriminado por razón de edad el derecho a reclamar compensación por sus daños al amparo del Art. 1802 del Código Civil, *supra*. A estos fines examinamos las normas relativas a la supletoriedad del Código Civil en el caso de *Santini Rivera v. Serv. Air, Inc.*, supra. Concluimos que el requisito de compatibilidad es condición necesaria para la aplicación supletoria del Código Civil.

Al examinar la Ley Núm. 100, *supra*, tenemos que concluir que no tiene disposición alguna referente a compensación al cónyuge del empleado discriminado. En estricto análisis, esto puede considerarse una omisión o deficiencia de la ley especial. Por ende, en virtud del Art. 12 del Código Civil, 31 L.P.R.A. sec. 12, debemos acudir a ese cuerpo en busca de la norma que falta en la ley especial. Los recurridos nos instan a aplicar de manera supletoria el Art. 1802, *supra*, como vehículo de indemnización al cónyuge del empleado. Sin embargo, existe un obstáculo a este uso su-

---

ges are authorized only for an aggrieved party 'who has suffered discrimination'. Since Graffius' husband was not the victim of discrimination, the trial court was not authorized to compensate him.

"We are aware of our duty to construe the Minnesota Human Rights Act liberally to accomplish its purposes. *Continental Can Co. v. State*, 297 N.W.2d 241, 248 (Minn. 1980). However, the general purpose of the act is to place the individual who has suffered discrimination in the same position he or she would have been in had no discrimination occurred. This policy would not be enhanced by recognizing a cause of action for consortium. It is contrary to the express words of the act and would not promote the underlying policy of the act. We hold that such a claim is not allowed under the act. The trial court's finding that Graffius' husband is entitled to damages against appellant is therefore reversed." (Cita omitida.)

pletorio del Art. 1802 con relación a la Ley Núm. 100, *supra*: la falta de compatibilidad entre ambos.

Nuevamente, la mayoría de este Tribunal, tras concluir que "los remedios que provee la Ley Núm. 100, *supra*, son exclusivamente para los obreros que en su empleo sean víctimas de las prácticas discriminatorias del patrono" (Sentencia, pág. 370), insiste en que "los parientes de un empleado que ha sido víctima de trato discriminatorio por su patrono bajo la Ley Núm. 100, *supra*, tienen una causa de acción propia bajo el Art. 1802 del Código Civil, *supra*, para obtener indemnización por los daños que ellos mismos hayan sufrido como consecuencia del referido discrimen laboral". Íd.

La inclusión, que pretenden los recurridos, del Art. 1802, *supra*, en el esquema de la Ley Núm. 100, *supra*, es contraria a su propósito y tendría el efecto de desvirtuarla.([17]) La Ley Núm. 100, *supra*, por sus características y regulación especial para el área laboral, repele la aplicación supletoria del Art. 1802, *supra*. Como expresáramos en nuestra opinión disidente en *Santini Rivera v. Serv Air, Inc.*, supra, esta conclusión esta en franca contradicción con el esquema de remedios que ha dispuesto la Legislatura en el área laboral.([18])

Por lo tanto, no podemos suscribir la opinión que emite la mayoría y concluimos que el cónyuge de un empleado que alega haber sido objeto de discrimen por razón de edad, en violación de la Ley Núm. 100, *supra*, no tiene

---

([17]) Aunque en *García Pagán v. Shiley Caribbean*, etc., 122 D.P.R. 193, 207–208 (1988), se expresó que la causa de acción que dispone la Ley Núm. 100, *supra*, es de igual amplitud que la acción civil de daños y perjuicios provista por la Ley de Derechos Civiles, este señalamiento se hizo a los únicos fines de establecer que el término "daños" en la Ley Núm. 100, *supra*, incluye la compensación por sufrimientos y angustias mentales al empleado o aspirante a empleo. *García Pagán v. Shiley Caribbean, etc., supra*, pág. 215. Por lo tanto, consideramos impropio utilizar la opinión de *García Pagán v. Shiley Caribbean, etc.*, supra, para prejuzgar la controversia ante nos.

([18]) Véase el escolio 21 de nuestra opinión disidente en *Santini Rivera v. Serv Air, Inc.*, supra, sobre otras leyes laborales que se verían afectadas por la decisión del Tribunal.

derecho a reclamar compensación en virtud del Art. 1802 del Código Civil, *supra*, por los daños que el discrimen alegadamente le ocasionó.

## V

El tercer y último señalamiento de error del peticionario requería determinar si la sociedad de gananciales compuesta por el empleado despedido y su cónyuge puede reclamar las indemnizaciones que disponen las Leyes Núms. 80, *supra*, y 100, *supra*. Al respecto, la mayoría del Tribunal resolvió en la afirmativa. Disentimos.

Examinemos primero la controversia con relación a la citada Ley Núm. 80. Esta dispone una indemnización para casos de despido injustificado.

> Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo designado en lo sucesivo como el establecimiento, donde trabaja mediante remuneración de alguna clase, contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:
> (a) El sueldo correspondiente a un mes por concepto de indemnización;
> (b) Una indemnización progresiva adicional equivalente a una semana por cada año de servicio.
> Los años de servicio se determinarán sobre la base de todos los períodos de trabajo anteriores acumulados que el empleado haya trabajado para el patrono antes de su cesantía, pero excluyendo aquellos que por razón de despido o separación anterior, le hayan sido compensados o hayan sido objeto de una adjudicación judicial. Art. 1 de la Ley Núm. 80, *supra*, 29 L.P.R.A. sec. 185a.

El antecedente de esta ley lo encontramos en la Ley Núm. 43 de 28 de abril de 1930, Leyes de Puerto Rico 357–359. Esta ley disponía que el empleado contratado por tiempo indeterminado que fuese despedido sin justa causa y sin previo aviso tenía derecho a recibir una indemnización de su patrono. Esta consistía en el sueldo de

un mes, una quincena o una semana, de acuerdo al método de pago del salario del empleado. Íd., pág. 357. La indemnización a pagarse a los mancebos y factores de comercio, y a los empleados contratados por tiempo determinado, se regía por el Código de Comercio y el Código Civil, respectivamente.([19])

En 1943 se enmendó la Ley Núm. 43, *supra*, a los efectos de eliminar el requisito de previo aviso y uniformar el contenido de la indemnización a un mes de sueldo. Sec. 1 de la Ley Núm. 84 de 12 de mayo de 1943, Leyes de Puerto Rico 197–199.

En 1949 se derogó la Ley Núm. 43, *supra*, y en su lugar se aprobó la Ley Núm. 50 de 20 de abril de 1949, Leyes de Puerto Rico 127–129. Esta nueva ley mantuvo que la indemnización por despido injustificado consistiría del sueldo correspondiente a un mes de trabajo. La Ley Núm. 50, *supra*, estuvo vigente hasta 1976, año en que se aprueba la Ley Núm. 80, *supra*. En los informes de las comisiones que examinaron el proyecto que dio origen a la ley se expresó que el propósito era brindar una mayor protección a los trabajadores que son despedidos sin justa causa. Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 1112 de 30 de mayo de 1976, 7ma Asamblea Legislativa, 9na Sesión Ordinaria, pág. 1, e Informe Conjunto de las

---

([19]) Sobre el particular nos señala el Lcdo. Ruy N. Delgado Zayas:

"En cuanto a los dependientes del comercio, el Código de Comercio ya proveía desde el 1ro. de mayo de 1886, (en su versión de 1932 se convirtió en el Artículo Núm. 220) que en el contrato sin tiempo fijo si el principal daba por terminado sin justa causa el mismo, debía pagar una compensación por el despido.

"Para los empleados contratados por tiempo determinado, el Código Civil en su Artículo 1474, en cuanto a los empleados de labranza y demás trabajadores asalariados, dispone desde que entró en vigor el 1ro. de enero de 1890 que en caso de que sean despedidos sin justa causa antes de finalizar el contrato, el patrono viene obligado a compensarles por los daños y perjuicios que les ocasione.

"Asimismo, el Código de Comercio desde su origen en 1886 dispone que el despido sin justa causa de un empleado de comercio contratado por tiempo determinado, obliga al principal a resarcir al dependiente por los daños causados." R.N. Delgado Zayas, *Apuntes para el estudio de la legislacion protectora del trabajo en el derecho laboral puertorriqueño*, San Juan, 1989, pág. 110.

Comisiones de Trabajo y Derechos Civiles y Servicio Público del Senado sobre el P. del S. 1112, *supra*, pág. 2. Con este propósito se estableció "por primera vez en nuestra jurisdicción la indemnización progresiva por el despido injustificado, consistente dicha indemnización progresiva en una indemnización básica equivalente al sueldo de un mes y una indemnización progresiva adicional equivalente a una semana por cada año de servicio". Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. del S. 1112 de 30 de mayo de 1976, pág. 2.

Del examen de la Ley Núm. 80, *supra*, y sus antecedentes, podemos concluir que esta legislación está dirigida a proveer una *indemnización* al trabajador despedido injustificadamente. Su propósito es evitar que el empleado quede en total desamparo económico mientras gestiona y consigue un nuevo empleo. *Arroyo v. Rattan Specialties, Inc.*, supra, pág. 65. Por lo tanto, no constituye un sustituto de sueldo o retribución por servicios prestados. *El que la indemnización se compute a base del salario del empleado no la convierte en retribución.*

El Art. 10 de la ley dispone que "[n]o se hará descuento alguno de nómina sobre la indemnización dispuesta por las secs. 185a a 185[1] de este título, debiendo el patrono entregar íntegramente el monto total de la misma al empleado". Ley Núm. 16 de 21 de mayo de 1982, Leyes de Puerto Rico 34–37 (29 L.P.R.A. sec. 185j). En el Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 320 de 21 de abril de 1982, proyecto de igual contenido al P. del S. 438 de 21 de mayo de 1982, 9na Asamblea Legislativa, 2da Sesión Ordinaria, que se convirtió en la Ley Núm. 16, *supra*, se expresa claramente que la indemnización por despido injustificado no constituye salario y, por lo tanto, no procede descuento de nómina alguno de esta suma.

"El Artículo 10, propone que no se hará descuento alguno

sobre la indemnización dispuesta por ley. En relación a este punto consideramos que la compensación correspondiente a un mes de sueldo y una suma adicional igual al sueldo de una semana por cada año que haya prestado servicios a su patrono.

Esta compensación *no se considera salario* y sí una compensación por los años [sic] ocasionados por el despido injustificado. El permitir descuento de esta nómina derrotaría la intención de la ley, que su fin último es uno reparador." (Énfasis suplido.) Informe de la Comisión de Trabajo y Asuntos del Veterano de la Cámara de Representantes sobre el P. de la C. 320 de 21 de abril de 1982.

El mandato legislativo que prohíbe que se haga descuento de nómina de la suma concedida como indemnización por la Ley Núm. 80, *supra*, indica, con meridiana claridad, que la intención de la Legislatura es que esta suma se considere como indemnización por el despido y no como retribución por servicios prestados.

Por no constituir la indemnización de la Ley Núm. 80, *supra*, retribución de la actividad productiva de un cónyuge, ésta carece de carácter ganancial. Véase *Carrero Quiles v. Santiago Feliciano*, 133 D.P.R. 727 (1993). Por lo tanto, la sociedad legal de gananciales no puede instar reclamación por la indemnización de la Ley Núm. 80, *supra*. Esto le corresponde al empleado despedido injustificadamente. Por tal razón, erró el tribunal de instancia al determinar que la indemnización que establece la Ley Núm. 80, *supra*, es un sustituto de sueldos del cónyuge despedido, y al permitir que la reclamara la sociedad legal de gananciales Martínez-Trueba.

Finalmente, los recurridos nos señalan que la sociedad de gananciales Martínez-Trueba puede reclamar, bajo la Ley Núm. 100, *supra*, los salarios dejados de percibir por el demandante Martínez. No les asiste la razón.

La Ley Núm. 100, *supra*, dispone entre sus remedios la compensación por daños pecuniarios al empleado o solicitante de empleo. 29 L.P.R.A. sec. 146. En *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985), reconocimos que la ley concede a éstos compensación por la pérdida

económica que el discrimen les ocasionó, y señalamos la manera de cuantificar estos daños. Para ello se utiliza, como base del cómputo, el ingreso que el empleado hubiera devengado de haber permanecido en su empleo. Sin embargo, esto no significa que la indemnización que provee la ley sustituya ingresos provenientes del trabajo y, por ende, constituya una partida por lucro cesante compensable a la sociedad legal de gananciales. *Franco v. Mayagüez Building, Inc.*, 108 D.P.R. 192, 195 (1978).

La Ley Núm. 100, *supra*, está dirigida a mantener la tenencia de empleo y a disuadir y eliminar las prácticas discriminatorias. Para ello provee varios remedios: la indemnización al trabajador discriminado, la reposición en el empleo y el que se ordene al patrono que cese y desista de los actos discriminatorios.

La indemnización, que consiste de una suma igual al doble del importe de los daños que el acto discriminatorio haya causado al empleado o solicitante de empleo, se computa a base de una fórmula. Véase *Odriozola v. Cosmetic Dist. Corp.*, supra. La determinación legislativa de que se indemnice por el doble de los daños tiene el propósito de disuadir a los patronos para que se abstengan de incurrir en actos o prácticas discriminatorias. A este fin se utiliza el ingreso que devengaba el empleado para determinar los daños económicos causados. Una vez se ha determinado el monto de los daños, esta suma se duplica y es esta cantidad la que constituye indemnización. Por lo tanto, el remedio de la Ley Núm. 100, *supra*, en cuanto a daños pecuniarios, no es un sustituto de sueldos o retribución por servicios y carece de naturaleza ganancial. El empleado víctima de discrimen es quien tiene derecho a reclamar esta indemnización. Estos daños no son de naturaleza ganancial.

Por los motivos antes expuestos, revocaríamos la resolución emitida por el Tribunal Superior, Sala de San Juan, el 10 de mayo de 1988.