# United States Court of Appeals
## For the First Circuit

No. 08-1032

CARLOS GONZÁLEZ FIGUEROA ET AL.,

Plaintiffs, Appellants,

v.

J.C. PENNEY PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Selya and Leval,[*]
Circuit Judges.

Marcelle D. Martell Jovet, with whom Law Offices of Marcelle
D. Martell Jovet, PSC was on brief, for appellants.
Kenneth C. Suria, with whom William Estrella Law Offices, PSC
was on brief, for appellee.

June 11, 2009

*Of the Second Circuit, sitting by designation.

**SELYA**, **Circuit Judge**. This appeal requires us to consider the interplay between the statute of limitations and the maintenance of derivative tort claims brought by relatives of an age discrimination plaintiff. The district court dismissed the relatives' claims as time-barred, holding that the limitations period had begun to run when the relatives learned of the principal plaintiff's demotion and continued to run without interruption despite the pendency of that plaintiff's discrimination claim before the Equal Employment Opportunity Commission (EEOC). González Figueroa v. J.C. Penney P.R., Inc. (González I), 247 F.R.D. 274, 281-82 (D.P.R. 2007). We affirm in substantial part but reverse as to a plaintiff who has not yet attained the age of majority.

## I. BACKGROUND

Because this appeal follows the granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), we recount the facts alleged in the amended complaint and draw all plausible inferences in favor of the appellants. See Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 43 (1st Cir. 2008); McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006).

In 1970, the defendant, J.C. Penney Puerto Rico, Inc. (J.C. Penney), hired the principal plaintiff, Carlos González Figueroa (González). Over the next thirty-five years, González worked his way up the corporate ladder, receiving a series of

-2-

promotions and pay increases.  He ultimately rose to the position of assistant store manager.

In June of 2005, J.C. Penney insisted that González either retire or accept a demotion.  González temporized over this Hobson's choice and, on September 18, J.C. Penney unilaterally demoted him.  In his new position — loss prevention manager — he absorbed a $25,000 per annum pay cut.

In roughly the same time frame, González applied for promotions to open positions within the organization that offered salaries comparable to what he had been earning.  J.C. Penney awarded each such position to a younger employee.[1]

González, who was then 50 years of age, concluded that his demotion was part of a concerted corporate campaign to oust older managers.  On May 11, 2006, he filed an administrative complaint with the EEOC charging that J.C. Penney had engaged in unlawful age discrimination.  On December 28, 2006, the EEOC issued a right-to-sue letter.  See 29 U.S.C. § 626(e).

Three months later González, his wife Elsa, and their three children (Carlos, Karla Michelle, and Karla Marie) sued J.C.

---

[1] The amended complaint alleges that "[a]t the same time" it demoted González, J.C. Penney "opened positions similar in pay grade" to his former job, but did not offer any of those positions to him.  Similarly, the charge that González filed with the EEOC alleged that the discriminatory conduct began and ended on September 18, 2005 (the date of his demotion).  For ease in exposition, we therefore refer to the September 18 demotion as embodying the totality of the allegedly discriminatory conduct.

Penney in Puerto Rico's federal district court. Their amended complaint is the operative pleading for purposes of this appeal.[2]

The amended complaint alleges violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, and certain Puerto Rico statutes. This appeal focuses on the plaintiffs other than González himself (the relatives). Insofar as the relatives are concerned, the gravamen of the action is their assertion that the discriminatory demotion gives rise to a separate but derivative cause of action in their favor under Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

Acting on the defendant's motion to dismiss, the district court concluded that the relatives' Article 1802 claims were time-barred. González I, 247 F.R.D. at 281-82. In reaching that conclusion, the court ruled that the one-year statute of limitations applicable to these claims began to run as soon as the relatives had notice of J.C. Penney's allegedly discriminatory treatment of González. Id. at 281. Because the limitations period was not tolled as to other persons during González's exhaustion of his administrative remedies, the relatives' claims were time-barred. Id. at 282.

The district court later entered a partial judgment

---

[2] In a ruling that is not contested on this appeal, the lower court decided that the amended complaint relates back to the date of the commencement of the action (March 27, 2007). See González I, 247 F.R.D. at 281.

against the relatives and certified that judgment as final under Federal Rule of Civil Procedure 54(b). This interlocutory appeal followed.

It soon came to light that the district court had certified the partial judgment without making any findings. We therefore remanded, albeit retaining appellate jurisdiction, so that the district court could remedy this oversight. See González Figueroa v. J.C. Penney P.R., Inc., No. 08-1032 (1st Cir. Jan. 18, 2008) (unpublished order). The district court responded promptly, see González Figueroa v. J.C. Penney P.R., Inc., Civ. No. 07-1258, 2008 WL 203654, at *2 (D.P.R. Jan. 23, 2008), and the appeal proceeded.

We pause at this point. Although Rule 54(b) allows the entry of judgment on a subset of the claims asserted in a multi-plaintiff, multi-claim action, "there is a long-settled and prudential policy against the scattershot disposition of litigation." Spiegel v. Trs. of Tufts Coll., 843 F.2d 38, 42 (1st Cir. 1988). Thus, a district court should certify a judgment under Rule 54(b) only after it has determined that (i) the ruling in question is final and (ii) there is no persuasive reason for delay. Id. at 42-43. We review the district court's finality determination de novo and its finding that there is no just reason to delay for abuse of discretion. See U.S. Gen., Inc. v. Albert, 792 F.2d 678, 681 (7th Cir. 1986).

In this instance, the finality of the disputed ruling is not open to question. See, e.g., Acha v. Beame, 570 F.2d 57, 62 (2d Cir. 1978). The court's explanation of why there was no reason for delay is more problematic, but we cannot say that the court abused its discretion in making that finding. Consequently, we proceed to the merits.[3]

## II. ANALYSIS

Appellate review of an order granting a motion to dismiss for failure to state a claim upon which relief can be granted is plenary. Young v. Lepone, 305 F.3d 1, 8 (1st Cir. 2002). Where, as here, the dismissal is grounded on a statute of limitations, we will affirm only if the record, construed in the light most flattering to the pleader, leaves no plausible basis for believing that the claim may be timely. See Warren Freedenfeld Assocs., 531 F.3d at 44; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

As a general rule, we look to the pronouncements of a state's highest court in order to discern the contours of that

---

[3] Even though we accept the certification in this instance, we caution that piecemeal appeals are disfavored and that, therefore, Rule 54(b) should be employed with great circumspection. A certifying court must weigh efficiency concerns, see, e.g., Curtiss-Wright Corp. v. Gen. Elec. Co., 446 U.S. 1, 8 (1980); consider the various criteria delineated in our case law, see, e.g., Spiegel, 843 F.2d at 43 & n.3; and articulate a cogent rationale supporting certification, see, e.g., Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir. 2003). A Rule 54(b) certification should not be made available simply because a party requests it.

state's law. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir. 2008). In regard to law-determination, Puerto Rico is the functional equivalent of a state. See Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 11 (1st Cir. 2008). Accordingly, an on-point decision of the Puerto Rico Supreme Court normally will control.

Here, however, the Puerto Rico Supreme Court has not spoken directly to the precise question that confronts us. Thus, our task is to vaticinate how that court likely would decide the issue. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996). In carrying out that task, our first step is to consult pertinent statutory language and analogous decisions of the state supreme court. Andrew Robinson Int'l, 547 F.3d at 51; Warren v. United Parcel Serv., Inc., 518 F.3d 93, 98 (1st Cir. 2008).

The relatives ground their claims in Puerto Rico's generic tort statute (Article 1802), which under certain circumstances has been authoritatively interpreted to provide a cause of action in favor of close kinfolk of a victim of unlawful workplace discrimination. See Santini Rivera v. Serv Air, Inc., 137 P.R. Dec. 1, 14 (1994); see also Maldonado Rodríquez v. Banco Cent. Corp., 138 P.R. Dec. 268, 276 (1995). The limitations period for actions brought pursuant to Article 1802 is one year. See P.R. Laws Ann. tit. 31, § 5298(2). That period ordinarily begins to run at the time that the aggrieved party knows (or should have known)

-7-

of both his injury and the identity of the party who caused it. Torres v. E.I. DuPont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000); Montañez v. Hosp. Metropolitano, 157 P.R. Dec. 96, 106 (2002).

In this case, the relatives allege that they have suffered emotional distress and consequential damages as a result of J.C. Penney's discriminatory treatment of González. It is common ground that the relatives learned of the allegedly discriminatory conduct at around the time of González's demotion. Thus, it would seem logical to conclude that the one-year statute of limitations on their claims began to run at that moment and expired in September of 2006 (several months before they sued).

The relatives labor to cast doubt on this conclusion. Their most loudly bruited contention is that the principal plaintiff's successful prosecution of his discrimination claim is an element of their derivative claims and, thus, the latter claims will not accrue unless and until the principal plaintiff prevails. To use an analogy, the relatives would have us treat their derivative claims like claims for malicious prosecution, which do not accrue until the aggrieved party, in a separate proceeding, obtains a favorable termination of the criminal charge. See, e.g., Heck v. Humphrey, 512 U.S. 477, 489 (1994).

That is a false analogy. A civil suit for malicious prosecution requires the favorable termination of an antecedent

criminal proceeding. See id. at 484. To the contrary, the relatives' claims do not mix civil and criminal determinations but, rather, are wholly civil. The Puerto Rico Supreme Court has expressly held that a derivative claim premised on underlying discrimination requires proof only of the same three elements as any other claim under Article 1802, namely: (i) a compensable injury; (ii) a wrongful act on the defendant's part; and (iii) a sufficiently tight causal nexus between the injury and the wrong. Santini Rivera, 137 P.R. Dec. at 6, 11; see Maldonado Rodríguez, 138 P.R. Dec. at 276. It necessarily follows that the Puerto Rico Supreme Court does not treat the principal plaintiff's success on the merits as an element of a relative's derivative claim under Article 1802.

The relatives counter-attack on several fronts. The chief weapon that they wield is an intermediate appellate court decision. See González Vázquez v. Quest Diag., Inc., Civ. No. K DP 2004-0460, 2007 WL 1578045, at *5 (P.R. Cir. Apr. 30, 2007).

As a theoretical matter, intermediate appellate decisions may furnish helpful guidance as to the resolution of unsettled questions of state law. Andrew Robinson Int'l, 547 F.3d at 51. At first blush, that principle fits here; Puerto Rico's highest court has not spoken directly to the question at hand. Nevertheless, the principle is not one of universal application — and in this instance, we find González Vázquez to be of little utility.

In the first place, the language from González Vázquez upon which the relatives rely is dictum. Although the court stated that a derivative claim accrues after the principal plaintiff has succeeded on the merits, this statement had no effect on the court's ruling; the court determined that the derivative claim was timely regardless of the accrual date because it was filed within one year of the occurrence of the allegedly discriminatory conduct, see González Vázquez, 2007 WL 1578045, at *3.

In all events, the González Vázquez dictum contradicts an earlier decision of a different panel of the same court (which the González Vázquez panel neglects to cite). See Santos Cabrera v. R.J. Reynolds Tobacco Co., Civ. No. DPE 2004-0943, 2005 WL 3720002, at *7-8 (P.R. Cir. Dec. 15, 2005). The latter case holds squarely that an Article 1802 derivative discrimination claim accrues on the date that the relative becomes aware of the defendant's allegedly discriminatory conduct. Id. at *8. In the course of its decision, the court explains that postponing the accrual of a derivative discrimination claim to the date that the principal plaintiff succeeds on his claim would be contrary to prevailing procedural norms. Id.

We believe that the Santos Cabrera analysis hews more closely than does the González Vázquez dictum to the knowledge-based accrual rule established in Puerto Rico by statute and binding precedent. See, e.g., P.R. Laws Ann. tit. 31, § 5298(2);

-10-

Montañez, 157 P.R. Dec. at 106; Colón Prieto v. Geigel, 115 P.R. Dec. 232, 245-47 (1984). We also believe that the González Vázquez dictum is unsound as a matter of policy: if that dictum were correct, it would prolong tremendously the life of such litigation, as derivative claimants would be able to bring suit years after the event (when the final appeal confirming judgment in favor of the principal plaintiff had been exhausted). Moreover, such a rule might require two separate trials in a large number of cases. For these reasons, we regard the González Vázquez dictum as unpersuasive.

The relatives' next attack derives from language used by the Puerto Rico Supreme Court suggesting that a relative's right to compensation is contingent upon the success of the principal plaintiff's claim. See, e.g., Martínez Campos v. Banco de Ponce, 138 P.R. Dec. 366, 371 (1995); Maldonado Rodríguez, 138 P.R. Dec. at 276. The relatives deduce from these authorities that the principal plaintiff's successful prosecution of his claim must occur before a derivative claim accrues. We do not agree.

Without exception, the Puerto Rico cases hawked by the relatives involve claims that were filed simultaneously, in a single proceeding, by the principal plaintiff and the derivative plaintiffs. See, e.g., Martínez Campos, 138 P.R. Dec. at 367; Maldonado Rodríguez, 138 P.R. Dec. at 270. In that configuration, a relative's cause of action is "contingent" in the sense that,

-11-

when and if the principal plaintiff's claim fails, so too does the relative's derivative claim.  See Maldonado Rodríguez, 138 P.R. Dec. at 276; see also Martínez Campos, 138 P.R. Dec. at 371.  This makes perfect sense; in a joint suit, the failure of the principal plaintiff to prove a discriminatory act necessarily estops the relative from proving the "wrongful conduct" element of her derivative action.

Federal courts in this circuit have charted a similar course, dismissing relatives' simultaneously filed derivative claims as an inevitable concomitant of the merits-based dismissal of the principal plaintiff's discrimination claim.  See, e.g., Cabán Hernández, 486 F.3d at 12-13; Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258 n.7 (1st Cir. 2000); Baralt v. Nationwide Mut. Ins. Co., 183 F. Supp. 2d 486, 487-89 (D.P.R. 2002); Domínguez v. Eli Lilly & Co., 958 F. Supp. 721, 745 (D.P.R. 1997).  These decisions in no way suggest that the timing of the principal plaintiff's success or failure affects the accrual date of other plaintiffs' derivative claims under Article 1802.

In a variation on this theme, the relatives assert that an individual may not institute a standalone action to recover on a derivative discrimination claim.  Instead, she must proceed jointly with (or after) the principal plaintiff.  Noting that an Article 1802 action accrues only when the plaintiff can exercise his right to sue, see, e.g., Vega Lozada v. J. Pérez & Compañía,

-12-

135 P.R. Dec. 746, 754-55 (1994), the relatives posit that their claims did not accrue until (at the earliest) the principal plaintiff had filed suit.

This is anfractuous reasoning. For one thing, none of the cases cited by the relatives alters the ordinary knowledge-based accrual rule articulated in the Civil Code. See P.R. Laws Ann. tit. 31, § 5298(2). Those cases merely exemplify the workings of that rule in particular factual scenarios. Because there is no dispute here as to when the relatives learned of their injury and its author, these cases offer them no succor.

For another thing, the relatives have not identified any Puerto Rico Supreme Court decision holding that relatives must file their derivative claims simultaneously with (or after) the principal plaintiff's filing of his claim.[4] The intermediate appellate court has suggested that the filing of a standalone claim is a viable option, see Santos Cabrera, 2005 WL 3720002, at *8, and we see no logical impediment to the commencement of such an independent action.

After all, the Puerto Rico Supreme Court consistently has referred to relatives' causes of action as "separate" or "independent" from the principal plaintiff's claim. See, e.g.,

---

[4] Although one district court has suggested this possibility, see Baralt, 183 F. Supp. 2d at 488, that result is not compatible with either relevant precedent or logic.

-13-

<u>Martínez Campos</u>, 138 P.R. Dec. at 371; <u>Maldonado Rodríquez</u>, 138 P.R. Dec. at 276; <u>Santini Rivera</u>, 137 P.R. Dec. at 5-6. Moreover, the three elements of a derivative discrimination claim under Article 1802 — injury, wrongful conduct, and causation — are not dependent upon the outcome of a parallel action but, rather, are susceptible of proof in a freestanding action.

To be sure, that proof overlaps to a degree with the proof that ordinarily would be adduced in the principal plaintiff's suit; for example, each action would require proof of the defendant's discriminatory conduct vis-à-vis the principal plaintiff. But in order to prevail on a derivative claim, a relative also must prove that she herself suffered an injury (distinct from any injury endured by the principal plaintiff). And as with any Article 1802 claim, the relative must show that her injury was proximately caused by the defendant's wrongful conduct.

Especially given that a derivative discrimination claim arises from a different font of liability (Article 1802) than the principal claim and that the two types of claims require proof of distinct elements, we hold that a relative may maintain an independent action under Article 1802, separate and apart from any action prosecuted by the principal plaintiff.[5]

---

[5] This is not to say that relatives and their principal cannot, if they so choose, join in a single simultaneously filed suit. Nor do we overlook that when the principal and the relatives sue independently, consolidation of the actions frequently will be the option of choice.

-14-

This holding blunts the force of the relatives' suggestion that applying the normal accrual rule would violate due process because it would place derivative plaintiffs in the untenable position of having to bring suit on their derivative claims before they possibly could do so. Cf. Alicea v. Córdova, 117 P.R. Dec. 676, 695-98 (1986) (finding due process violation because statute of limitations effectively required aggrieved parties to sue before they knew of their injury). The fears upon which that suggestion rests are imaginary because, as we have explained, the relatives could have brought standalone claims at any time within the one-year limitations period. They were not obliged to await any particular action by the principal plaintiff, much less a resolution of the principal plaintiff's claim.

At any rate, the relatives could have awaited the principal plaintiff's filing of suit yet still have safeguarded their rights by the simple expedient of making an extrajudicial claim within the one-year limitations period. See P.R. Laws Ann. tit. 31, § 5303; Santos Cabrera, 2005 WL 3720002, at *8. That proffer would have informed J.C. Penney of the nature of their grievance and their desired relief. See Secretario del Trabajo v. Finetex Hosiery Co., 116 P.R. Dec. 823, 827 (1986). Such an extrajudicial claim would have required no particular formality. Rodríguez Narváez v. Nazario, 895 F.2d 38, 44 (1st Cir. 1990). This device easily could have been used, had the relatives so

-15-

elected, as a means of awaiting the principal plaintiff's exhaustion of administrative remedies.

To recapitulate, a favorable resolution of the principal plaintiff's discrimination claim is not an element of a relative's derivative claim under Article 1802. That being so, the relatives' claims in this case accrued at the time that they learned of González's demotion in September of 2005. They could have either sued independently on those claims at any time within the one-year limitations period (regardless of whether or when the principal plaintiff sued) or stopped the ticking of the clock by filing extrajudicial claims. They did neither, and the limitations period expired. Consequently, their claims are time-barred unless they are entitled to the benefit of tolling. It is to that subject that we now turn.

This appeal requires us to discuss two different forms of tolling. To begin, Puerto Rico law contemplates tolling when an action accrues during the minority of an individual plaintiff. See P.R. Laws Ann. tit. 32, § 254(1). Here, the amended complaint describes one of the derivative plaintiffs, Carlos Manuel González Bermúdez (the principal plaintiff's son), as twelve years old. The age of majority in Puerto Rico is twenty-one. See P.R. Laws Ann. tit. 31, § 971. Thus, the statute of limitations on Carlos's Article 1802 claim is tolled until he reaches that age. See, e.g., Rentas Santiago v. Autonomous Mun'y of Ponce, 453 F. Supp. 2d 387,

392 (D.P.R. 2006).  It follows that the district court erred in dismissing Carlos's claim as untimely.

The other relatives are adults and, thus, are not entitled to the benefit of age-based tolling.  If tolling applies to their behoof, it must be rooted in a different mechanism. Although the relatives' brief is vague in this respect, the only possibility appears to stem from the principal plaintiff's filing of an administrative complaint with the EEOC.

Of course, González was required to employ certain administrative procedures before proceeding with his ADEA claim. See 29 U.S.C. §§ 626(d)(1), 633(b).  But that filing served only to enable González to perfect his ADEA claim, and to toll the time for suing on his claim under Puerto Rico's anti-discrimination law. See, e.g., Rodríguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 61 (1st Cir. 2005); Mercado-García v. Ponce Fed. Bank, 979 F.2d 890, 895-96 (1st Cir. 1992); see also P.R. Laws Ann. tit. 29, § 150; Matos Molero v. Roche Prods., Inc., 132 P.R. Dec. 470, 486 (1993).  The relatives' claims are Article 1802 claims, not discrimination claims as such.  In other words, they lie beyond the reach of this tolling effect.  Thus, González's filing with the EEOC did not toll the statute of limitations on the relatives' Article 1802 claims.  Sánchez Ramos v. P.R. Police Dep't, 392 F. Supp. 2d 167, 181-82 (D.P.R. 2005); Cintrón v. Puerto Rico, 127 P.R. Dec. 582, 595-96 (1990); cf. Johnson v. Ry. Express Agency,

-17-

Inc., 421 U.S. 454, 465-66 (1975) (holding that commencement of EEOC proceedings for plaintiff's Title VII claim did not toll statute of limitations applicable to plaintiff's counterpart claim under 42 U.S.C. § 1981).

The short of it is that the relatives (other than the minor) have advanced no legitimate reason to support tolling of the limitations period on their derivative claims. Hence, those claims are time-barred.

Finally, we deal with the possibility of certification — a possibility raised sua sponte by our dissenting brother. Certification of questions of local law from one court to another is, by its very nature, a cumbersome and time-consuming process. The use of that device stops a case in its tracks, multiplies the work of the attorneys, and sharply increases the costs of litigation. Not surprisingly, then, we have held with monotonous regularity that certification is inappropriate when the course that the state courts would take is reasonably clear. See, e.g., Díaz-Ramos v. Hyundai Motor Co., 501 F.3d 12, 17 (1st Cir. 2007); Porter v. Nutter, 913 F.2d 37, 41 n.4 (1st Cir. 1990); Bi-Rite Enters., Inc. v. Bruce Miner Co., 757 F.2d 440, 443 n.3 (1st Cir. 1985).

This is just such a case. Although the Puerto Rico Supreme Court has not answered the disputed question in haec verba, there is every reason to believe that it will do so in the way that we articulate. The only tea leaf fairly suggesting that a

-18-

derivative claim under Article 1802 does not accrue until there has been a successful resolution of the principal plaintiff's discrimination claim is dictum in a decision of an intermediate appellate court (González Vázquez). That dictum is flatly contradicted by the holding of the same court in a different case. See Santos Cabrera, 2005 WL 3720002, at *8.

Equally as important, the rule proposed by the González Vázquez dictum must be wrong; taken literally, it would mean that the trials of the principal and derivative claims never could be joined in a single proceeding because the former would need to be tried to a conclusion before the latter could be tried. There is no reason to think that the Puerto Rico Supreme Court would subscribe to so inefficient an arrangement.[6]

## III. CONCLUSION

We need go no further. We hold that the district court correctly determined that the claims of the relatives, other than the minor plaintiff Carlos Manuel González Bermúdez, were untimely and, thus, appropriately dismissed those claims. We affirm that

---

[6] The dissent expresses concern that our decision not to certify the question denies the relatives "the proper application of the law," post at 25 n.4 (Torruella, J., dissenting), because this court rather than the Puerto Rico Supreme Court has decided the question. This concern is misplaced for three reasons. First, the relatives chose a federal forum even though they could have sued in the local courts. Second, they have not asked us to certify the question even though they could have done so. Third — and most salient — we do not believe that there is any reasonable doubt about the correct result.

-19-

ruling, while at the same time reversing the court's erroneous dismissal of the minor plaintiff's claim.

**<u>Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion</u>.  <u>All parties shall bear their own costs</u>.**

**- Concurring/Dissenting Opinion Follows -**

**TORRUELLA**, <u>Circuit Judge</u> **(Dissenting in part and Concurring in part)**. This appeal presents a nebulous issue of Puerto Rico law, begat by conflicting local jurisprudence and by the absence of a definitive resolution by Puerto Rico's highest court. That issue pertains to the date of accrual under Puerto Rico law for a relative tort claim under Article 1802 that is "derivative of" and "contingent upon" a principal plaintiff's discrimination claim. As "the existing case law does not provide sufficient guidance to allow us reasonably to predict" how the Puerto Rico Supreme Court would resolve this issue, <u>In re Engage, Inc.</u>, 544 F.3d 50, 57 (1st Cir. 2007), I am firmly convinced that this appeal presents precisely the type of question that the certification process was designed to address. <u>See</u> <u>Muñiz-Oliveras</u> v. <u>Stiefel Labs, Inc.</u>, 496 F.3d 29, 39-40 (1st Cir. 2007). Because I conclude that its resolution should thus come from the Supreme Court of Puerto Rico, I respectfully dissent.

Our intervention under the circumstances is not only risky (and perhaps, even presumptuous) but also unwise and impolitic, considering the procedures that are readily available to resolve this conundrum. <u>See</u> P.R. Laws Ann. tit. 32, app. III, Rule 53.1(f); <u>VanHaaren</u> v. <u>State Farm Mut. Auto Ins, Co.</u>, 989 F.2d 1, 3 (1st Cir. 1997) ("Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court. . . ."). By following this avenue, a

-21-

court can readily clarify uncertain issues of state law, such as we have before us.  Moreover, the certification process is precisely fitted to this case because the issue before us involves nuances and concepts peculiar to Puerto Rico's civil law system which are foreign to common law courts.[1]  Thus, we should pause, take an intellectual deep breath, and allow Puerto Rico's Supreme Court, whose expertise on the subject of its own legal culture is unquestionably superior to ours, to first provide an authoritative answer on this important and complicated question.

---

[1] See Rodríguez-Narváez v. Nazario, 895 F.2d 38, 43 (1st Cir. 1990) ("[T]he courts of Puerto Rico have consistently observed that civil law tradition, and not common law, governs the rules applicable to limitation periods and tolling provisions under Puerto Rican law."); Guevara v. Dorsey Labs., Div. of Sandoz, Inc., 845 F.2d 364, 366 (1st Cir. 1988) ("The Supreme Court of Puerto Rico has made clear that the common law of the United States is not controlling, when filling gaps in the civil law system." (citation omitted)); Vega Lozada v. J. Pérez & Compañía., Inc., 135 P.R. Dec. 746, 755 (1994) (certified translation) (noting that Puerto Rico has "adopted the liberal civil-law trend on the statute of limitation of actions for damages").  For an example of the different approaches compare, e.g., Normandin v. Levine, 621 A.2d 713, 716 (R.I. 1933) (although claim for loss of consortium is "derivative in nature and inextricably linked to the injured spouse's action," "each spouse maintains an entirely unique cause of action under the law and the assertion of one spouse's right within the statutory period of limitations will not excuse the failure of the other spouse to assert within the statute of limitations his or her own separate right." (internal citation omitted)) with González Vázquez v. Quest Diagnostic Inc., Civ. No. K DP 2004-0460, 2007 WL 1578045 (P.R. Cir. Apr. 30, 2007) (a family member's contingent claim does not accrue and its limitation period does not start to run until it is determined if there was discrimination against the primary plaintiff as a matter of fact and law).

Furthermore, the circumstances of this case present a quintessential example of the conditions that render certification proper under the law of this circuit. There is clearly an absence of "controlling precedent" from the Puerto Rico Supreme Court on this issue. See Engage, 544 F.3d at 53. In fact, the majority opinion acknowledges that "the Puerto Rico Supreme Court has not spoken directly to the precise question that confronts us." (Maj. Op. at 7). It is true that "in the absence of controlling precedent, certification would [nevertheless] be inappropriate where state law is sufficiently clear to allow us to predict its course." Engage, 544 F.3d at 53; see also Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 25-26 (explaining that "[a]bsent controlling state precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction when the course [the] state courts would take is reasonably clear." (quotations omitted and emphasis added)). However, this is hardly the case in which the course of Puerto Rico law can reasonably be predicted, given that the only cases precisely on point are two decisions from Puerto Rico's intermediate appeals court whose ratio decidendi directly conflict with one another, and which point to completely different outcomes. Compare González Vázquez, at 5[2] (a family member's Article 1802

---

[2] As no official translation of this Spanish language opinion is available, all quotations are from and citations are to the certified translation submitted by the parties.

-23-

contingent claim does not accrue and its limitation period does not start to run until it is "determined if there was a discrimination [against the primary plaintiff] as a matter of fact and law.") with Santos Cabrera v. R.J. Reynolds Tobacco Co., Civ. No. DPE 2004-0943, 2005 WL 3720002, at *8 (P.R. Cir. Dec. 15, 2005) (a family member's Article 1802 contingent claim accrues on the date the relative becomes aware of the defendant's allegedly discriminatory conduct against the primary plaintiff).  In light of the squarely conflicting authority, it is puzzling how the majority found sufficient clarity to predict what course Puerto Rico's Supreme Court would take if it were faced with this issue.[3]

In any event, if I were to undertake a prediction, I would conclude that the Supreme Court would likely go on a different course than that assumed by the majority in the present appeal.  This is because I find that the appeals court holding in González Vázquez, the more recent of the two relevant appeals court decisions, comports more closely with the continuum of binding

_____

[3] Other conditions we have deemed relevant to certification are present in this case as well.  This question is clearly "determinative of the pending cause of action," Engage, 544 F.3d at 52, in that the date of accrual determines whether the relative plaintiffs' contingent tort claims, filed more than one year after the primary's plaintiff's demotion, are dismissed as time-barred or permitted to continue.  Moreover, this is not a case in which the "policy arguments line up solely behind one solution," id. at 57, given the conflicting interests in fairness, finality, judicial economy and federalism involved.  See also Muñiz-Olivari, 496 F.3d at 39-40 (certifying novel Puerto Rico law question on the ground that "questions of local policy, . . . are best addressed by the Supreme Court of Puerto Rico in the first instance.").

-24-

Puerto Rico Supreme Court decisions preceding it, regarding the proper application of the statutes of limitations to contingent causes of action. I am thus doubly persuaded that we should seek that court's advice before embarking on what could very well be an erroneous prediction of Puerto Rican law.[4]

The holding in González Vázquez can best be understood by reading it within the context of the rest of the opinion. In that case, the primary plaintiff was terminated from her position at Quest in August 2002, after which time she exhausted administrative procedures with the Commonwealth's Anti-Discrimination Unit, prior to filing, on August 18, 2003, a judicial employment discrimination claim under Law 100, which was accompanied by her daughter's contingent claim under Article 1802. See González Vázquez,

---

[4] "The problem, of course, is that when a federal court 'gets it wrong,' the litigants are denied the proper application of the law. Jessica Smith, Avoiding Prognostication & Promoting Federalism: The Need for an Inter-Jurisdictional Certification Procedure in North Carolina, 77 N.C. L. Rev. 2123, 2134 (1999). The majority disputes the validity of this concern, in part, because the parties chose a federal forum and did not request certification. (Maj. Op. at 19 n.6). But in my view, a party's entitlement to the "proper application of the law" remains intact regardless of the forum he elects, and our discretion to certify, in the interest of such "proper application" is not affected by a party's failure to request certification. See Engage, 544 F.3d at 57 n.10 (noting that "this court maintains discretion to certify questions . . . when a party fails to request certification in the court below, or even sua sponte"). Moreover, an erroneous application of the law has implications well beyond these parties, in that, "until the erroneous decision is corrected, non-parties [will] conform their behavior to an improper legal norm." Smith, supra, at 2134. Thus, the reasons for certification extend beyond the interests of the relative-plaintiffs in this case.

certified translation at 1-2.  Quest alleged that the daughter's action, filed more than one year after her mother's termination, had prescribed, but the Appeals Court disagreed.  Id. at 2, 9.  It held that the statute of limitation with respect to the derivative action under Article 1802, "start[ed] to count as of the moment in which the action can be exercised, that is, as of the moment that it is resolved as a matter of fact and of law that [her mother] was discriminated [against]."  Id. at 9 (emphasis added).  Applying its holding, the court found that the relative's derivative cause of action under Article 1802 had not prescribed.[5]  Id.

---

[5]  The majority attempts to discount the González Vázquez holding, that the relative's contingent Article 1802 action does not "accrue" until discrimination against the primary (Law 100) plaintiff has been established, as "dicta."  We disagree.  If anything, the case presents alternative holdings.  This is because there was factual dispute as to the date of the mother's termination.  Thus, the court concluded that had the termination taken place on August 16, 2002, as plaintiffs alleged, then given how weekends and holidays are counted, the daughter's claim, filed on August 18, 2003, within one-year of the termination for prescription purposes, was not time-barred.  Id. at 5.  However, acknowledging that Quest alleged the termination to have taken place on August 15, 2002, rendering the filing of the complaint to have taken place than one year from the date, the court continued with its analysis to ultimately hold that even if the complaint had not been filed within one year from the alleged acts of employment discrimination, the daughter's contingent claims are nevertheless not time-barred.  Id. at 9.  In so concluding, the court explicitly held that the relative's Article 1802 claim accrued and the prescription term did not start to run until the discrimination of the primary plaintiff was established.  In any event, as neither González Vázquez nor Santa-Cabrera are decisions of the Puerto Rico Supreme Court, whether dicta or not, they are both merely persuasive authority.  See Fortini v. Murphy, 257 F.3d 39, 49 (1st Cir. 2009).

-26-

In support of its decision, the González Vázquez panel relied on Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1, 14 (1994), the Puerto Rico Supreme Court decision creating the very cause of action that is the subject of the present dispute. See Santini Rivera, 137 P.R. Dec. at 14 (holding that "relatives of an employee who has been a victim of an Act No. 100 discriminatory treatment . . . have a cause of action under [Article] 1802 to be compensated for the harm resulting from said discrimination." (quoting official translation at 13)). In recognizing the relatives' Art. 1802 action, the Supreme Court explicitly stated in Santini that "[i]n said circumstances, the relatives will recover damages once said discrimination [under Law 100] is established." Id. (emphasis added & quoting official translation at 13). The appeals court also relied on the Supreme Court's analysis of Santini in Maldonado v. Banco Central Corp., 138 P.R. Dec. 268, 276 (1995), in which the Supreme Court indicated that the action of the relatives is "separate and contingent" to that of the discriminated employee.[6] González Vázquez, at 7. It explained that the

_____

[6] This is in keeping with the consistently expressed view of that court that the relative's cause of action is a "contingent" cause of action, that is, that the discriminated employee's relative has a cause of action under Article 1802 of the P.R. Civil Code that is contingent on the employee establishing his/her cause of action. See Maldonado, 138 P.R. Dec. at 276; Marcano-Rivera v. Pueblo Int'l, Inc., 232 F.3d 245, 258 n.7 (1st Cir. 2000); Baralt v. Nationwide Mut. Ins. Co., 183 F. Supp. 2d 486, 488 (D.P.R. 2002); see also Black's Law Dictionary 31 (6th ed. 1990) (defining the term "contingent claim" as "one which has not accrued and which is dependent on some future event that may never happen").

-27-

relatives' action is "separate because it is not governed by the provisions of Law 100, but of Art. 1802," and contingent "since if the employee does not prevail, his/her consort . . . cannot claim for a discrimination that was not proven." Id. (quoting Maldonado, 138 P.R. Dec. at 276).

Recognizing the relative's argument that her cause of action is a "contingent" one, "which cannot be exercised until the claim of Law 100 is adjudicated," the appeals court said:

> Pursuant to what is provided in Art. 1868 of the Civil Code, 31 L.P.R.A. sec. 5298, which establishes the cognoscitive theory of damage, the prescriptive period of an action for damages commences to count when the aggrieved knew of the damage. On the other hand, Art. 1869 of the Civil Code, 31 L.P.R.A. sec. 5299, sustains that: "The time for the prescription of all kinds of action, when there is no special provision that provides otherwise, will commence to count as of the day in which they could have been exercised.

González Vázquez, at 8 (emphasis added) (quoting Santiago Rivera v. Ríos Alonso, 156 P.R. Dec. 181, 188 (2002)). Relying on this language, the appeals court noted that the true point at which a cause of action accrues "is the date in which the aggrieved knew of the damage; who was the author of the same; and also, since he/she knows the necessary elements to be able to effectively exercise his/her cause of action." Id.[7] But the court continued, noting

---

[7] This reasoning is also consistent with Vega Lozada, in which the Supreme Court stated that in Puerto Rico an action "accrues" when the aggrieved party knew of the harm and could exercise his action. 135 P.R. Dec. at 754.

-28-

that it could not lose sight of the perspective "that prescription is not a rigid figure but it admits judicial adjustments, as required by the particular circumstances of the cases and the notion as to what is fair." Id. It then cited the Supreme Court decision in Alicea v. Córdova for the proposition that "the provisions regarding prescription that require that the plaintiffs file their cause of action before they have a right to said action, violate their right to due process." Id. (citing 117 P.R. Dec. 676 (1986)).

Relying on Maldonado, the appeals court reasoned that "in order for [the relative] to be able to file her action for damages . . . she has to wait for it to be determined if there was . . . discrimination as a matter of fact and of law; because the relative 'cannot claim a discrimination that is not proven.'" Id. It concluded that because the [relative's] actions "depends on the establishment of the illegal act, Art. 1869 of the Code, as applied in Santiago v. Ríos Alonso, requires that the term start to count as of the moment in which the action can be exercised, that is, as of the moment that it is resolved as a matter of fact and of law that [the primary plaintiff] was discriminated." Id. at 9. It thus concluded that the daughter's action had not prescribed. Id. The application of González Vázquez to this case would mean that, since the primary plaintiff's claim has not yet been adjudicated,

-29-

the relative plaintiffs' contingent claims have not even accrued, let alone prescribed.[8]

Although in my opinion, the holding in González Vázquez, firmly grounded in binding Puerto Rico Supreme Court precedent, could very well be dispositive of the appeal before us, in view of the conflicting jurisprudence that exists among Puerto Rico's

_____

[8] The majority needlessly assumes that the González Vázquez rule would mean that the principal and derivative claim could never be joined in a single proceeding, as the former must be tried to a conclusion before the latter accrues. (Maj. Op. at 19). However, that assumption ignores the frequent practice of allowing technically unaccrued contingent claims, such as third party claims, to be accelerated and joined with the primary action:

> A third-party claim is ordinarily proper even though the claim is contingent. Indeed, a third-party complaint is by its nature a contingent claim. Thus, a third-party action may be brought even though the third party defendant is only contingently liable . . . In other words, although the right to recover from the third-party defendant does not accrue until after judgment or compromise and settlement, a third-party action against him or her can be maintained.

59 Am. Jur. 2d Parties § 288 (2009) (citations omitted); see also Lehman v. Revolution Portfolio LLC, 166 F.3d 389 (1st Cir. 1999) (holding that impleading a third-party defendant on theories of indemnification and contribution presented justiciable claims even though the claims were contingent upon the defendant being found liable to the plaintiff in the underlying suit); D'Onofrio Constr. Co. v. Recon Co., 255 F.2d 904 (1st Cir. 1958) (same); Matter of M. Frenville Co., Inc., 744 F.2d 332, 337 (3d Cir. 1984) (noting that claim for indemnity does not arise "until the prime obligation to pay has been established" but citing New York rule that "allows third-party actions to be commenced in certain circumstances before they are technically ripe, so that all parties may establish their rights and liabilities in one action"); Connors v. Suburban Propane Co., 916 F. Supp. 73 (D. N.H. 1996) ("[U]nder state contribution statutes that condition the cause of action upon discharge of common liability to plaintiff, [Fed. R. Civ. P.] 14 can be used to accelerate the defendant's cause of action for contribution").

appeals courts, I hesitate to modify my initial view favoring certification to the Supreme Court of Puerto Rico. That circumstance makes it singularly tactful that we refer the matter to that court as the appropriate forum for resolving such intramural disputes. It is also that court that should properly deal with the policy considerations raised by the majority. Muñiz Oliveras, 496 F.3d at 39-40 ("[Q]uestions of local policy . . . are best addressed by the Supreme Court of Puerto Rico in the first instance.").[9]

To conclude, it has been said that in diversity cases, "the federal judge must often trade his judicial robes for the garb of a prophet." Smith, supra, at 2133 n.30 (quotation marks omitted). But in circumstances such as these, where our prophetic powers are at a nadir due to the existence of directly conflicting non-binding local precedent, where a wrong prediction may needlessly extinguish the rights of a party, and where a mechanism for finding out what the local court would actually do is readily

---

[9] Though I would leave it to the Puerto Rico Supreme Court to weigh policy considerations, I cannot fail to comment upon the suggestion made by the majority, to the effect that the relatives may bring so-called "standalone" claims prior to the establishment of the principal discrimination. (Maj. Op. at 15). Were such a practice to become requisite for litigants in this area of the law, we could very well have the incongruous outcome of the relatives recovering on their derivative claims notwithstanding the discriminatee failing to do so in his/her principal suit. Can such an absurd legal outcome be seriously countenanced? I think the answer to this question is more self evident than the one that should be certified to the Supreme Court of Puerto Rico in the present case.

available, I, unlike my colleagues, am reluctant to engage in prophesy. Thus, I respectfully dissent from the majority's affirmance of the district court's dismissal of the adult relatives' claims and urge that this question be certified to the Supreme Court of Puerto Rico.

I join the majority opinion to the extent that it reverses the district court's dismissal of the minor relative's claim as time-barred, as Puerto Rico law clearly tolls the statute of limitations until a child reaches the age of majority. See P.R. Laws Ann. tit. 32, § 254(a). In all other respects, for the reasons herein stated, I respectfully dissent.